**Margarethe MARTH and Rosemarie Lippmann, Plaintiffs,**

v.

**INDUSTRIAL INCOMES INCORPORATED OF NORTH AMERICA, United States Trust Fund Management Corporation, Industrial Growth Fund of North America, Peter M. Bekeny and Ilona M. Bekeny, Defendants.**

**No. 67 Civ. 1317.**

United States District Court
S. D. New York.

July 31, 1968.

Windels, Merritt & Ingraham, New York City, for plaintiffs.

Wofsey, Certilman & Haft, New York City, for defendants Industrial Incomes Incorporated of North America, United States Trust Fund Management Corp., Peter M. Bekeny and Ilona M. Bekeny; Harvey M. Sklaver, New York City, of counsel.

MANSFIELD, District Judge.

This is a Rule 12(f), F.R.C.P., motion that seeks to strike affirmative defenses.

Plaintiffs, two West German citizens, purchased 5,000 shares of Industrial Incomes Incorporated of North America (Industrial) on or about June 28, 1964. Alleging violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), Rule 10b–5 promulgated thereunder, and state common law fraud, they have tendered their shares and endeavor to rescind the transaction. They assert that defendants, Industrial, Peter Bekeny (Peter), its president, Ilona Bekeny, Peter's wife, and an Industrial officer, United States Trust Fund Management Corporation (Trust), Industrial's wholly-owned subsidiary, and Industrial Growth Fund of North America (Growth), an open-end mutual fund managed by Industrial, which is named as a party but has not yet been served, delivered to plaintiffs a number of writings that defendants knew to be false and misleading, and which they knew to omit to state material facts. Plaintiffs further allege that these writings induced them to purchase their shares.

Prior to filing their answer, defendants moved for summary judgment principally on the basis of an agreement dated November 6, 1965 entered into be-

tween plaintiffs and Peter which, defendants contended, constituted a settlement and relinquishment of plaintiffs' claims. Under the terms of the agreement,

(a) Peter undertook to purchase 3,000 shares of Industrial stock from plaintiffs at $8.50 per share, thereby obligating himself to purchase and pay for 1,000 shares by December 1st in each of the years 1966, 1967, and 1968 (Par. 1).

(b) Plaintiffs had the right to "terminate" the agreement by notice at any time (Par. 9(a)).

(c) Upon "completion" of the agreement or its "termination" by plaintiffs no further claim could be made by plaintiffs against Peter or Trust on account of the purchase by plaintiffs of their shares and plaintiffs agreed to "deliver a general release to Bekeny" (Par. 9 (b)); and

(d) Upon the "faithful performance and completion of this agreement by [Peter]" or "termination" by plaintiffs, "*then* the parties are hereby released" of all claims each against the other (Par. 11(c)). (Emphasis supplied.)

In denying the motion for summary judgment, Judge Wyatt found, on the undisputed facts, that Peter did not pay for 1,000 Industrial shares of plaintiffs by December 1, 1966. Second, Judge Wyatt found that only Peter was a party to the agreement, so that only he could rely upon the agreement on a motion for summary judgment. Third, it was found that plaintiffs have not "terminated" the November 6, 1965 agreement. In all, it was concluded that there had been no "completion," no "termination" and no "faithful performance and completion" of the agreement by Peter. Defendants' motion was found to be wholly without merit, and accordingly was denied. Marth v. Industrial Incomes Inc. of North America, 291 F.Supp. 994. (S.D.N.Y.1967).

Thereafter, in their answer, defendants denied the allegations contained in the complaint, and set forth six affirmative defenses, including estoppel, waiver, laches, and the statute of limitations. Plaintiffs, by way of a Rule 12(f), F.R. C.P., motion, endeavor to strike defendants' affirmative defenses as insufficient.

## STATUTE OF LIMITATIONS

 Plaintiffs' action was commenced in April, 1967 with the filing of the complaint and the issuance of an order of attachment. The statute of limitations applicable to New York State common law fraud is six years. N.Y.C.P.L.R. § 213(9). Since the limitations period for a § 10(b) claim is borrowed from the governing state fraud statute, formerly C.P.A. § 48(5) and C.P.L.R. § 213(6), Fischman v. Raytheon Mfg. Co., 188 F.2d 783, 787 (2d Cir. 1951); Glickman v. Schweikart & Co., 242 F.Supp. 670, 674 (S.D.N.Y. 1965); III Loss, Securities Regulation 1774 (1961 ed.), the six-year period is likewise applicable. Having thus determined that the complaint was filed within three years after the plaintiffs' alleged stock purchase, the affirmative defense based upon the statute of limitations is totally lacking in merit, as a matter of law insufficient, and is hereby stricken.

## DEFENSES ARISING OUT OF THE AGREEMENT

Defendants contend that the November 6, 1965 agreement constitutes a waiver of plaintiffs' rights (fifth affirmative defense) and that by reason of this agreement they are estopped from maintaining this action. In the recent past, these and similar defenses have been sanctioned as a shield to a 10b–5 action. Royal Air Properties, Inc. v. Smith, 312 F.2d 210 (9th Cir. 1962); see Tobacco and Allied Stocks v. Transamerica Corp., 143 F.Supp. 323, 327 (D.Del.1956), affd., 244 F.2d 902 (3d Cir. 1957); Pitofsky v. Brucker, 291 F.Supp. 321 (S.D.N.Y. 1966); Cartier v. Dutton, 45 F.R.D. 278 (S.D.N.Y.1965); cf. Dale v. Rosenfeld, 229 F.2d 855 (2d Cir. 1956). See also Popper v. Havana Publications, Inc., 122 So.2d 247, 84 A.L.R.2d 476 (Fla.App.

1960) (blue sky law). See generally Note, 73 Yale L.J. 1477 (1964).

■■ Under the terms of the agreement, plaintiffs have given up no claims arising out of their purchase of the Industrial shares because, on the undisputed facts, they have not "terminated" and Peter has neither "completed" nor faithfully performed. Since these conditions precedent for the release have not been fulfilled, even though Peter had ample opportunity to complete his obligations, the defenses related to the agreement are, as a matter of law, futile. See New York Gen. Obligations Law § 15–501(3). Even assuming the applicability of federal law with respect to this issue on the § 10(b) claim, it does not appear that an unperformed executory accord would be any more successful as a defense to a § 10(b) claim than to one arising under New York law, in view of the hostility that has been expressed to agreements waiving rights under the securities legislation. See 15 U.S.C. § 78cc(a); Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). This is not a case in which on the untried contentions of the parties it is possible to envision victory for either side, see Schine v. Schine, 254 F.Supp. 986 (S.D.N.Y.1966); rather the Court is presented with a situation in which the affirmative defenses based upon the agreement are "wholly without merit," '66–'67 CCH Fed.Sec.L.Rep. at 96,248 and must be stricken as legally insufficient. Boston and Main Corp. v. Chicago, B. & Q. R. R., 258 F.Supp. 930 (S.D.N.Y.1966); Occidental Life Ins. Co. v. Fried, 245 F.Supp. 211 (D.Conn. 1965). Accordingly, the fifth and sixth affirmative defenses are stricken.

### DEFENSES RELATING TO PLAINTIFFS' RETENTION OF THEIR SHARES

The first three affirmative defenses are as follows:

(1) Estoppel based upon plaintiffs' exercise of rights as shareholders after having obtained knowledge as to the falsity of the alleged misleading statements and omissions, and defendants' reliance thereon;

(2) Laches based upon the failure of the plaintiffs, upon discovery of the facts, to effect a sale of their shares with reasonable promptness so as to avoid any loss; and

(3) Laches based upon the failure to assert their claims within a reasonable time after discovery, so that defendants could have repurchased these Industrial shares and resold them at a price in excess of current market value.

An estoppel defense based upon plaintiffs' receipt of dividends, see Fitch v. United Royalty Co., 143 Kan. 486, 55 P. 2d 409 (1936), their exercise of voting rights, Straley v. Universal Uranium and Milling Corp., 289 F.2d 370 (9th Cir. 1963), and other assertions of shareholders' rights, see Note, 73 Yale L.J. 1477, 1480 (1964), after the acquisition of knowledge, has been upheld in rescission actions. While Professor Loss has quite properly discredited some of these cases as exalting talismanic technicalities over the equities of the case, see III Loss, Securities Regulation 1676–80 (1961 ed.), in view of the wide variety of factual contexts in which this defense appears, it should not be rejected at this stage.

■ On the facts before us, the November agreement provided that plaintiffs would have the right to have a nonvoting "representative" attend the Board of Directors meetings, commencing in March, 1966, to participate, advise and counsel (Par. 3). Moreover, the plaintiffs consented to the sale of Industrial to Trust (Par. 9(c)). Whether the representative's participation in the managerial affairs or the plaintiffs' exercise of their shareholder rights was such as to make rescission inequitable at this time, see In re Racine Auto Tire Co., 290 F. 939 (7th Cir. 1923); Restatement, Restitution § 142(1), are questions that cannot be determined on this motion to strike. Therefore the motion to strike the first affirmative defense is denied.

The laches defense based upon plaintiffs' failure to sell their shares with reasonable promptness following discovery is one that more properly brings into focus the question of mitigation. Ordinarily laches relates to a delay in bringing a cause of action to the court's attention, rather than to a delay in performance, or with respect to other matters. Nash v. J. Arthur Warner & Co., 137 F.Supp. 615 (D.Mass. 1955); Restatement, Restitution § 148 (1). If indeed plaintiffs, upon learning of the alleged misrepresentations, and prior to entering into the agreement with Bekeny, could have sold their shares for a price equal to or greater than their purchase price and failed to do so, they should properly bear the consequences. They are not entitled to speculate with the defendants' money, and thereafter obtain a rescission remedy when the speculation fails. See James Wood Gen. Trading Establishment v. Coe, 297 F.2d 651 (2d Cir. 1961); Kaufmann v. Delafield, 224 App.Div. 29, 229 N.Y.S. 545 (1st Dept. 1928). Assuming that the facts turn out to be as the affirmative defense suggests, whether the defense is labelled laches or mitigation, a good defense to a claim for rescission will have been made out. See Globus v. Law Research Service, Inc., 287 F.Supp. 188 (S.D.N.Y.1968). Accordingly the second affirmative defense will not be stricken.

Since the laches defense based upon the failure to assert claims within a reasonable time after discovery is one that may present substantial questions of fact and of law, Rogen v. Ilikon Corp., 361 F.2d 260 (1st Cir. 1966); Royal Air Properties v. Smith, 333 F.2d 568 (9th Cir. 1964); Irvin v. Koehler, 230 F. 795 (2d Cir. 1916); Charles E. Quincy & Co. Arbitrage Corp. v. Cities Serv. Co., 156 Misc. 83, 282 N.Y.S. 294 (N.Y.Sup.Ct.1935); but see III Loss, Securities Regulation 1771–73 (1961 ed.), the motion to strike the third affirmative defense will be denied. Occidental Life Ins. Co. v. Fried, 245 F. Supp. 211 (D.Conn.1965).

For the above reasons, the motion to strike the fourth, fifth and sixth affirmative defenses will be granted. The motion to strike the first, second and third affirmative defenses will be denied.

So ordered.