421 F.2d 338
 Fed. Sec. L. Rep. P 92,564
Ernest KLEIN, Plaintiff-Appellant,
v.
John J. BOWER, William F. O'Connor, Bower, O'Connor &
Taylor, a partnership, Mary Anna Macukas, Caroline Schiff,
Mary Ann Oates, Jerome Ackerman, National Bank of North
America, Belgian-American Banking Corporation, Christian
Hislaire and Northeastern Pennsylvania National Bank & Trust
Co., Defendants-Appellees, and Jacques Fisher, Susan Fisher,
Andrew Bekefi, Lilian Bekefi, Securities Clearance Corp.,
Paul Sandrisser and Amalgamated Bank of New York, Defendants.
 No. 213, Docket 33754.
 United States Court of Appeals, Second Circuit.
 Argued Nov. 6, 1969.
Decided Jan. 23, 1970.
 
 Israel I. Davidson, Brooklyn, N.Y. (Irving L. Weinberger, New York City, on the brief), for appellant.
 Michael M. Maney, New York City (Sullivan & Cromwell, Michael A. Cooper, New York City, on the brief), for appellees Belgian-American Banking Corp. and Christian Hislaire.
 Leonard Joseph, New York City (Dewey, Ballantine, Bushby, Palmer & Wood, Francis R. Jones, New York City, on the brief), for appellee Northeastern Pa. Nat. Bank & Trust Co.
 John Gardner, New York City (Bower, O'Connor & Gardner, New York City), for appellees John J. Bower, William F. O'Connor, Bower, O'Connor & Taylor, a partnership, Mary Anna Macukas, Caroline Schiff and Mary Ann Oates.
 Myron J. Greene, New York City (Millard & Greene, New York City), on the brief for appellee, Jerome Ackerman.
 Anthony J. D'Auria, New York City (Cole & Deitz, New York City), on the brief, for appellee, National Bank of North America.
 Before WATERMAN, FRIENDLY and SMITH, Circuit Judges.
 J. JOSEPH SMITH, Circuit Judge:
 
 
 1
 This action was brought by appellant Klein against various banks and individuals (including secretaries and stenographers of defendant law firm), a law partnership and a factor for damages and other relief arising out of loans he obtained using registered securities as collateral. Appellant alleged six 'causes of action': the first charging violations of the margin requirements on loans secured by securities set by the Board of Governors of the Federal Reserve, Regulations T and U, 12 C.F.R. 220, 221 (1969), pursuant to section 7 of the Securities Exchange Act of 1934, 15 U.S.C. 78g (1964);[1] the second charging conversion of his collateral securities; the third praying for an accounting due to alleged overcharges and omitted credits on his loan account; the fourth charging illegal transportation in interstate commerce of his collateral securities; the fifth praying for rescission of the loan transactions and return of his securities due to alleged fraudulent representations by various defendants which induced him to enter the transactions, and due to subsequent alleged breaches of contract terms; and the sixth alleging a conspiracy with fraud and malice by defendants and praying for punitive damages. On motions by defendants under Rules 12(b) and 56 of the Federal Rules of Civil Procedure to dismiss and for summary judgment on various grounds, Judge Tyler of the United States District Court for the Southern District of New York dismissed appellant's actions on the grounds that the first charge was untimely under the applicable statute of limitations, and that the other charges were barred by collateral estoppel, due to a prior litigation in the courts of New York state. As to one appellee here, Northeastern Pennsylvania National Bank & Trust Co. ('NPNB'), Judge Tyler dismissed the complaint on the ground that venue was improperly laid in the Southern District of New York. From these dismissals appellant appeals against many (but not all) of the defendants below. We agree that venue was improperly laid as to NPNB and we affirm the other dismissals by the court below on the ground that all of appellant's causes of action were barred by applicable statutes of limitations. We need not consider the other argued bases for affirmance.
 
 
 2
 The facts so far as relevant to this appeal are as follows. In early October, 1958, appellant arranged with a factor, Securities Clearance Corp. ('SCC'), to borrow money pledging his securities as collateral. Appellant agreed to maintain his collateral so that the balance on the outstanding loan would not exceed 97% Of the market value of the pledged securities. Under the agreement, SCC was apparently permitted to repledge appellant's securities for loans not to exceed appellant's outstanding debt. Appellant's pledged securities, if not repledged, were to be held for his account with SCC at the Commercial Bank of North America, now National Bank of North America ('CBNA'). One Fisher, an officer of SCC, allegedly told appellant that SCC had $5 million available for loans.
 
 
 3
 Between October 3, 1958 and November 21, 1958, appellant borrowed large sums from SCC on notes secured by various registered securities which he delivered to CBNA. According to appellant's figures, on November 21, 1958, the market value of the pledged securities was $672,150 and the outstanding loan was $639,699.10. According to appellant, during November, 1958, SCC instructed CBNA to transfer some of appellant's pledged securities to the personal accounts of several of the defendants, and some of these defendants either sold the securities or repledged them as collateral on personal loans from several banks including NPNB, Belgian-American Banking Corp. ('B-A'), and Amalgamated Bank of New York ('ABNY'). The amounts borrowed by the sundry individual defendants on the repledged securities allegedly were in excess of appellant's outstanding debt. Moreover, the loans on the repledged securities allegedly had an unlawfully narrow margin under the existing margin regulations.
 
 
 4
 Around November 21, 1958, appellant apparently discovered some of these alleged irregularities, and after negotiation with SCC it was agreed that appellant should phase out his account with SCC by paying off his notes and receiving in return his pledged securities. SCC agreed to instruct the banks holding repledged securities to deliver the securities against appellant's payment. Appellant contends that he thereafter tendered full payment but that B-A and ABNY refused to release the repledged securities.
 
 
 5
 Defendants claim that in the latter half of November, 1958, the market value of appellant's collateral fell and that SCC requested appellant to bring up his collateral so as to restore the 3% Margin. On November 25 and 26, 1958, upon appellant's alleged failure to bring up his collateral, SCC ordered the sale of all of appellant's securities except several IT&T bonds worth $3,000. On December 4, 1958, SCC sent appellant the remaining bonds and a check for $3,029.25 closing out what remained in appellant's account.
 
 
 6
 On October 2, 1961, appellant commenced a suit in the Supreme Court of New York, New York County, against SCC, B-A, CBNA, ABNY, and several of the individual defendants in the instant action. The state action alleged conversion of appellant's securities, fraud and intentional violation of agreements, and sought damages and the return of the securities. After extensive discovery, the case went to trial and at the end of appellant's case judgment was entered against appellant, dismissing appellant's complaint and taxing defendants' costs against him. The Appellate Division affirmed and the New York Court of Appeals denied leave to appeal. Klein v. Securities Clearance Corp., Index No. 18651/1961 (N.Y.Sup.Ct., N.Y.County, April 29, 1966), aff'd 27 A.D.2d 801, 280 N.Y.S.2d 348, motion for leave to appeal denied, 20 N.Y.2d 645, 285 N.Y.S.2d 1025, 231 N.E.2d 788 (1967). Thereafter appellant commenced this suit by filing his lengthy complaint on July 1, 1968, nearly ten years after the transactions in question had occurred.
 
 I. Venue
 
 7
 First we will consider the venue question as to appellee NPNB. NPNB is a national banking association established under the National Bank Act of 1864, 12 U.S.C. 21 er seq. (1945) which has its principal office in Scranton, Pennsylvania. Although NPNB has no offices outside of Pennsylvania, appellant claimed below that it was doing business in New York through an agent, the Hanover Bank. New York law provides for personal jurisdiction over non-domiciliaries if they transact business in the state through an agent.[2] However, section 94 of the National Bank Act, 12 U.S.C. 94 (1945) limits the venue in state and federal court suits against national banks created thereunder.[3] Although this provision could be read as not excluding suits in other locations, the Supreme Court has held that the section permits suits against national banking associations in state or local courts only in the county in which they are located. Mercantile Nat'l Bank at Dallas v. Langdeau, 371 U.S. 555, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963). Therefore to the extent appellant's action is founded in state law and the New York jurisdictional statute, appellant would only have venue in a state or federal court in the county or district in which NPNB is located or established. Michigan Nat'l Bank v. Robertson, 372 U.S. 591, 83 S.Ct. 914, 9 L.Ed.2d 961 (1963). To the extent appellant's action against NPNB is grounded in the Securities Exchange Act of 1934 and the margin regulations pursuant thereto, he might seek to apply the broader venue provisions in section 27 of that Act. 15 U.S.C. 78aa (1963). However, this court recently held in a suit under 10(b) of the Securities Exchange Act of 1934 that Congress had not intended to carve out a special exception for securities actions to the narrow venue provisions of the National Bank Act 94. Bruns, Nordeman & Co. v. American Nat'l Bank & Trust Co., 394 F.2d 300 (2d Cir.), cert. denied, 393 U.S. 855, 89 S.Ct. 97 (1968). Although the narrow venue of the National Bank Act imposes inconveniences on plaintiffs, especially in cases of multiple defendants, the remedy for the situation must be provided by Congress. See ALI, Study of Division of Jurisdiction between State and Federal Courts 412-13 (1969). The court properly dismissed appellant's action against NPNB for lack of venue.
 
 II. Statute of Limitations
 
 8
 Appellant's action seems to be based partly on federal law and partly on state law. Several of his 'causes of action' appear to be premised entirely on state law: cause number two on conversion of his securities; cause number three for an accounting on alleged overcharges for interest and commissions, etc. and alleged omitted credits; and cause number five for rescission on alleged false representations and intentional breach of contractual obligations. Others appear to be based entirely on federal law: cause number one on alleged violations of securities regulations on margin lending; and cause number four on illegal interstate transportation of securities. Cause number six praying for punitive damages seems to be based on the other causes, adding that the actions alleged were committed with malice.[4]
 
 
 9
 The federal aspects of appellant's action are founded in an alleged violation of the margin requirements in Regulations T and U pursuant to 15 U.S.C. 78g (1964). Since section 7 of the Securities Exchange Act of 1934 does not provide its own statute of limitations (since it does not explicitly provide for a private right of action) we must turn to state laws for the applicable limitations period.[5] The issue here is which New York limitations period should apply as to appellant's causes premised on a violation of federal margin requirements.
 
 
 10
 There are three possibly applicable sections in New York law. First, an action based on fraud must be commenced within six years, computed from the time due diligence would have uncovered the fraud. (N.Y.C.P.A. 48(5) (1939)) N.Y.Civil Practice Law & Rules (CPLR) 213(6), 206(c) (McKinney 1963) (for action accruing prior to 1963; see 218(b)), as amended, CPLR 213(9) (McKinney Supp.1969). Second, an action to recover on a liability created or imposed by statute except as otherwise provided must be brought within three years. CPLR 214(2). Third, a ten-year period is applicable to general equity actions which accrued prior to September 1, 1963. N.Y.C.P.A. 53 (1939), amended by CPLR 213(1) (reducing period to six years after 1963); CPLR 218.
 
 
 11
 Appellant's federal claims would appear to be barred if either of the first two provisions apply, and could only succeed if the third applies. If the fraud limitations period applies, then appellant would have to bring this action within six years of the time that he could have discovered the alleged fraud using due diligence. Appellant's own affidavit in the court below admits that by October 2, 1961, at the commencement of the state court action, appellant knew that SCC had procured credit to finance the loans to appellant by using his securities to secure further bank loans to an individual, appellee Ackerman. It also admits that he knew of CBNA's involvement, since it served as the conduit through which the securities allegedly were channeled. Thus, the lower court was correct in finding that appellant or his counsel knew or should have known sufficient facts to recognize the alleged fraud by October 2, 1961, well over six years prior to the commencement of this action. It is of no moment that, as he further claimed in this affidavit, appellant did not discover until after the state trial in 1966 the full 'enormity of SCC's operation' and the alleged fact that SCC was mingling appellant's securities with those of others in order to collateralize 'thin' bank loans for individual accounts. The fact remains that appellant had by his own admission sufficient knowledge in 1961 to put him on notice as to any alleged fraud. Therefore, the statutory period began to run then and did not await appellant's leisurely discovery of the full details of the alleged scheme. Talmadge v. United States Shipping Board, 54 F.2d 240, 243 (2d Cir. 1931) (L. Hand, J.); Sheehan v. Municipal Light & Power Co., 54 F.Supp. 169, 175 (S.D.N.Y.1943), aff'd, 151 F.2d 65 (2d Cir. 1945); Sielcken-Schwarz v. American Factors, Ltd., 265 N.Y. 239, 245-246, 192 N.E. 307, 310 (1934); Kelly v. City of New York, 276 App.Div. 540, 96 N.Y.S.2d 156 (1950), aff'd, 302 N.Y. 589, 96 N.E.2d 893 (1951).
 
 
 12
 Appellant's contention that the question of when with diligence he could have discovered the alleged fraud is a factual one which can only be determined after a trial is inapplicable here, for even accepting appellant's factual assertions as true, he cannot escape the statutory bar. Thus, this case is unlike those cited in which summary judgment on this question was held to be impermissible since on those cases if plaintiffs' versions of the facts were found to be true, they would not have been barred. Saylor v. Lindsley, 391 F.2d 965 (2d Cir. 1968); Shapiro v. Schwamm, 279 F.Supp. 798 (S.D.N.Y.1968).
 
 
 13
 If, as the court held, the three-year limitations period for actions based on statutory liabilities applies, then obviously appellant is barred since more than nine years passed prior to this action.
 
 
 14
 Appellant, therefore, seems to argue that the ten-year period in the third provision encompassing equity actions applies. This argument is without merit. New York courts have long held that a prayer for equitable relief will not bring an action under the longer limitations period for equity actions when full relief can be granted at law. Keys v. Leopold, 241 N.Y. 189, 149 N.E. 828 (1925); Schreibman v. Chase Manhattan Bank, 15 A.D.2d 769, 224 N.Y.S.2d 977 (1962); Guild v. Hopkins, 271 A.D. 234, 63 N.Y.S.2d 522 (1946), aff'd, 297 N.Y. 477, 74 N.E.2d 183 (1947); Newton v. Simon, 85 N.Y.S.2d 455 (Sup.Ct. of N.Y. County 1948). The prayer for an accounting in cause number three and the prayer for rescission in cause number five are not enough to bring the action within the longer equity period. Appellant's unsupported allegations to the contrary notwithstanding, damages are sufficient and an accounting and recission are unnecessary to provide full relief. Shultz v. Manufacturers & Traders Trust Co., 128 F.2d 889, 896-897 (2d Cir.), cert. denied, 317 U.S. 674, 63 S.Ct. 79, 87 L.Ed. 541 (1942). Since in choosing among state statutes of limitations to apply in actions under federal law we must look to state court interpretations of the statutes 'to see where the claim fits into the state scheme,' we must conclude that appellant's federal causes do not fit under the longer ten-year equity limitations period. Moviecolor Limited v. Eastman Kodak Co., 288 F.2d 80, 90 A.L.R.2d 252 (2d Cir.), cert. denied, 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26 (1961); see 3 Loss, Securities Regulation 1774 (1961 ed.).
 
 
 15
 Appellant's causes based on state law are likewise barred by directly applicable New York statutes of limitations. Cause number two for conversion of his securities is subject to a three-year period. CPLR 214(3)-(4); Guild v. Hopkins, supra, Einhorn v. Einhorn, 20 A.D.2d 914, 249 N.Y.S.2d 439 (1964). Cause number three based on overcharges and omitted credits in appellant's loan account is subject to the six-year period governing actions for an accounting and for breach of contract. CPLR 213(2); Shultz v. Manufacturers & Traders Trust Co., 128 F.2d 889 (2d Cir), cert. denied,317 U.S. 674, 63 S.Ct. 79, 87 L.Ed. 541 (1942); see Sadwith v. Lantry, 219 F.Supp. 171, 178 (S.D.N.Y.1963); Dancy v. Aldhous, 279 App.Div. 1066, 112 N.Y.S.2d 634 (1952). Cause number five based on misrepresentation and breach of contract is subject to the same section. French Evangelical Church of New York v. Borst, 22 A.D.2d 511, 256 N.Y.S.2d 805 (1965). Since this action was brought more than nine years after the causes of action accrued, all of these state causes are barred. Cause number six praying for punitive damages is dependent on the other causes and is therefore also barred.
 
 
 16
 Having found that all of appellant's 'causes' are barred by applicable statutes of limitations, we need not examine the other proposed grounds for affirmance. Affirmed.
 
 
 
 [1]
 The first cause also alleges fraud, misrepresentation, and conspiracy in connection with the alleged violation of the margin regulations. These allegations are more fully explicated in connection with cause number five, so we will treat them as part of that cause
 
 
 [2]
 N.Y. Civil Practice Law & Rules 302(a)(1); see Hertz, Newmark & Warner v. Fischman, 53 Misc.2d 418, 279 N.Y.S.2d 97 (Civ.Ct. of the City of New York 1967); cf. Friedr. Zoellner (N.Y.) Corp. v. Tex Metals Co., 278 F.Supp. 52, 55 (S.D.N.Y.1967)
 
 
 [3]
 'Actions and proceedings against any association under this chapter may be had in any district or Territorial court of the United States held within the district in which such association may be established or in any State, county, or municipal court in the county or city in which said association is located having jurisdiction in similar cases.'
 
 
 [4]
 Although appellant did not specifically allege a violation of the fraud provisions of the 1934 Act (29 and Rule 10b-5), he might contend that his allegations of fraud and misrepresentation in causes number one and five constitute a valid claim under those provisions. To the extent appellant makes any such claim he would seem to be barred by the applicable state statute of limitations, which would be N.Y. Civil Practice Law & Rules 213(a) and 203(f) (McKinney 1963 and Supp.1969). Fischman v. Raytheon Mfg. Co., 188 F.2d 783, 787 (2d Cir. 1951); Marth v. Industrial Incomes, Inc., 290 F.Supp. 755 (S.D.N.Y.1968); see discussion of limitations period for fraud actions, infra at 343
 
 
 [5]
 Fischman v. Raytheon Mfg. Co., 188 F.2d 783, 787 (2d Cir. 1951) (action under 10(b) of 1934 Act, and 11 of the Securities Act of 1933); accord, Fratt v. Robinson, 203 F.2d 627, 37 A.L.R.2d 636 (9 Cir. 1953); Marth v. Industrial Incomes, Inc., 290 F.Supp. 755 (S.D.N.Y.1968); 3 Loss, Securities Regulation 1774 (1961 ed.)