**MARATHON ENTERPRISES, INC., Plaintiff,**

v.

**Irving FEINBERG, Samuel Mittlemark, and John "Doe", as Executor for the Estate of Louis Mittelmark, Defendants.**

**No. 83 Civ. 8533.**

United States District Court, S.D. New York.

July 3, 1984.

Baer Marks & Upham, New York City (Eugene R. Scheiman and Allan Dinkoff, New York City, of counsel), for plaintiff.

## MEMORANDUM AND ORDER

CANNELLA, Senior District Judge.

Defendants' motion for summary judgment is granted. Fed.R.Civ.P. 56(b).

## FACTS

On August 20, 1970, defendants transferred to plaintiff all outstanding shares of their wholly-owned corporation, Concourse Provision Company ["Concourse Provi-

sion"], in return for plaintiff's limited shares. Thereafter, Concourse Provision became a division of plaintiff.[1] Following the Agreement and Plan of Acquisition ["August 1970 Agreement"] between the parties, defendants made a series of representations concerning the accuracy of certain financial statements.[2] Specifically, defendants represented that Concourse Provision had "good and marketable title to all its property and assets shown on Exhibit 7 [accompanying financial statements]."[3] Although the financial statements do not list individual properties, there are general entries for "machinery, equipment and office furniture."[4] Plaintiff asserts that machinery and equipment at three plants in the Bronx are included on the balance sheets of the August 1970 Agreement and are covered under defendants' marketable title representations.[5]

Upon execution of the August 1970 Agreement, plaintiff assumed the obligations of a 1969 lease ["1969 Lease"] entered into between Concourse Provision and Concourse Management Corporation ["Concourse Management"].[6] Concourse Management had title to the Bronx plants and leased the property to Concourse Division for a term of eleven years commencing January 1, 1970.[7] In 1954, Concourse Management had previously leased Bronx property to Concourse Provision.[8] The 1969 Lease recites that all machinery and equipment, physically affixed to the premises, is the property of Concourse Management as lessor and not Concourse Provision as lessee.[9]

On February 24, 1978, plaintiff's attorney wrote to one of the defendants concerning a problem with the 1969 Lease.[10] On November 6, 1978, plaintiff's attorney sent one of the defendants' copies of the 1969 Lease, acknowledging that plaintiff assumed the lease.[11] After termination of the lease in December 1980, plaintiff vacated the premises and removed machinery and equipment. On February 9, 1981, Concourse Management advised plaintiff that it had breached the 1969 Lease by "holding over" beyond the term of the lease and by removing certain machinery and equipment attached to the premises which belonged to Concourse Management as fixtures.[12]

In March 1981, Concourse Management commenced suit against plaintiff in New York Supreme Court for damages resulting from the removal of machinery and equipment from the Bronx plants.[13] In the answer, plaintiff admits that it acquired Concourse Provision on August 20, 1970 and

---

**1.** *See* Plaintiff's 3(g) Statement at 1 (filed Feb. 7, 1984) [hereinafter "Plaintiff's 3(g) Statement"].

**2.** *See* Affidavit of Gregory Papalexis at 1–3 (filed Feb. 7, 1984).

**3.** *See* Plaintiff's 3(g) Statement, Exh. A at 3(f) ["August 1970 Agreement"].

**4.** The copy of the August 1970 Agreement and Plan of Acquisition provided to the Court contains nine pages of financial statements which follow the beginning of the Report of Examination of Concourse Provision Company ["Concourse Provision"] by Sharlach Ress Goldrich & Co.—certified public accountants. This report is marked Exhibit 6. Because there is no indication of when Exhibit 7 commences, the Court considers all the financial statements after the start of Exhibit 6 to be within the ambit of the "good and marketable title" representation.

**5.** *See* Complaint, 83 Civ. 8533 (JMC), ¶¶ 20–21 (S.D.N.Y. Nov. 23, 1984) [hereinafter "Complaint"].

**6.** *See* Affidavit of Irving Feinberg, ¶ 4 (filed Jan. 11, 1984); Defendant's Notice of Motion, Exh. B at ¶ 6 (filed Jan. 11, 1984) [hereinafter "Notice of Motion"].

**7.** *See* Notice of Motion, Exh. D.

**8.** Concourse Management Corporation leased a Bronx plant located at 1353–55 Boston Post Road to Concourse Provision for ten years commencing July 1, 1954 at the rent of $9,000 per year. *See* Reply Affidavit of Irving Feinberg, Exh. G (filed Feb. 16, 1984) [hereinafter "Feinberg Affidavit II"].

**9.** *See* Notice of Motion, Exh. D, ¶¶ 40, 46.

**10.** *See id.,* Exh. E.

**11.** *See id.,* Exh. F.

**12.** *See* Feinberg Affidavit II, Exh. H.

**13.** *See* Notice of Motion, Exh. B.

assumed all its rights and obligations, including those set forth in the 1969 Lease.[14]

█ Plaintiff filed the instant action on November 23, 1983, alleging securities fraud, breach of contract and common law fraud arising from the August 1970 Agreement. Plaintiff alleges that each defendant made material misrepresentations, that Concourse Provision had good and marketable title to certain machinery and equipment affixed to the Bronx plants and suffered $10,131.15 in actual damages.[15] Defendants assert that the action is barred by statutes of limitations.

## DISCUSSION

*Fraud*

█ When a federally created right of action has no accompanying statute of limitations, the state law of limitations applies. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 210 n. 29, 96 S.Ct. 1375, 1389 n. 29, 47 L.Ed.2d 668 (1976); *Klein v. Bower*, 421 F.2d 338, 343 (2d Cir.1970). Plaintiff's claim of federal securities law fraud rests on section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 for which there are no limitation periods. In actions alleging violations of these provisions, the Second Circuit has consistently applied the New York common law fraud statute of limitations. *See Stull v. Bayard*, 561 F.2d 429, 431 (2d Cir.1977), *cert. denied*, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 783 (1978); *Klein v. Shields & Co.*, 470 F.2d 1344, 1346 (2d Cir.1972); *Hoff Research & Development Laboratories, Inc. v. Philippine National Bank*, 426 F.2d 1023, 1026 (2d Cir.1970). Under New York law, claims of fraud must be brought within two years from the time plaintiff discovered or could have discovered the fraud with the exercise of reasonable diligence, or within six years of the fraud itself—whichever is later.[16] N.Y.Civ.Prac.Law §§ 203(f), 213(8) (McKinney Supp.1984); *see IIT v. Cornfeld*, 619 F.2d 909, 928–929 (2d Cir.1980); *Rice v. Baron*, 456 F.Supp. 1361, 1367 (S.D.N.Y. 1978); *Smith v. Sarkisian*, 63 A.D.2d 780, 782, 404 N.Y.S.2d 911, 912 (3d Dep't 1978), *aff'd*, 47 N.Y.2d 878, 392 N.E.2d 1257, 419 N.Y.S.2d 74 (1979).

**14.** *See id.*, Exh. C, ¶¶ 4–6.

**15.** *See* Complaint, ¶ 55. The Court questions how plaintiff arrived at the $10,000.01 amount for an assertion of diversity jurisdiction. 28 U.S.C. § 1332(a). A review of the financial statements to the August 1970 Agreement, *see supra* n. 5, shows that the value accorded *all* the "machinery, equipment and office furniture" at the Bronx plants was $31,450 in the 1969 audit and $45,696 in the unaudited 1970 worksheets. *See* August 1970 Agreement, Exh. 6 at 2, 8. The yearly depreciation of these assets was listed at $9,132 in 1968 and $10,659 in 1969. *See id.* at 3–4. The rate of depreciation on the unaudited worksheet is approximately $6,600 for eight months or a yearly rate of $9,900. Assuming that *all* assets listed under the headings of "machinery, equipment and office furniture" are the specific machinery and equipment assets in controversy, and after according these assets the highest possible value and the lowest possible depreciation rate, the net value falls below $10,000 as early as 1974. There is no other asset valuation presented to the Court and the $10,-131.45 figure accorded by plaintiff appears contrived for jurisdictional purposes. Additionally, plaintiff obtained investment tax credits for the purchase of the equipment which it continued to depreciate. *See* Complaint, ¶ 32. Moreover, interest and costs are excluded when determining diversity jurisdictional amounts. 28 U.S.C. § 1332(a). Plaintiff's allegation of punitive damages are clearly excessive after close scrutiny and the Court, in its discretion, determines to exclude them. *See Zahn v. International Paper Co.*, 469 F.2d 1033, 1033 n. 1 (2d Cir.), *aff'd*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973); *Arnav Industries, Inc. v. Dreskin*, 551 F.Supp. 461, 464 (S.D.N.Y.1982); *Fritz v. Warner-Lambert Pharmaceutical Co.*, 349 F.Supp. 1250, 1253 (S.D.N.Y.1972).

**16.** N.Y.Civ.Prac.Law § 213(8) (McKinney Supp. 1984) provides that a fraudulent claim must be commenced within six years: "[A]n action based upon fraud; the time within which the action must be commenced shall be computed from the time plaintiff or the person under whom he claims discovered the fraud, or could with reasonable diligence have discovered it."

N.Y.Civ.Prac.Law § 203(f) (McKinney Supp. 1984) provides in relevant part that

where the time within an action must be commenced is computed from the time when facts were discovered or from the time when facts could with reasonable diligence have been discovered, or from either of such times, the action must be commenced within two years after such actual or imputed discovery or within the period otherwise provided, computed from the time the cause of action accrued, whichever is longer.

■ It is clear that any fraudulent acts of misrepresentation occurred not later than August 20, 1970. This action was not filed until November 23, 1983, more than six years later. Plaintiff, by its own admission, discovered the alleged fraud no later than February 9, 1981, the date defendants advised plaintiff that it had breached the 1969 Lease. Plaintiff also could have discovered the alleged fraud with reasonable diligence as early as 1970 when it assumed responsibility and possession of the 1969 Lease. In either event, the action was commenced more than two years after plaintiff's "discovery" of the fraud. Thus, plaintiff has failed to bring its fraud claims within the requisite time periods, thereby making its claims time-barred. The only remaining question is whether plaintiff's breach of contract claim can survive a statute of limitations defense.

### Contract

■ Under New York law, an action based upon a contractual obligation or liability must be commenced within six years.[17] N.Y.Civ.Prac.Law § 213(2). In contract cases, the statute of limitations begins to run when the breach accrues. *See Schmidt v. McKay,* 555 F.2d 30, 34 (2d Cir.1977); *Kassner & Co. v. City of New York,* 46 N.Y.2d 544, 550, 389 N.E.2d 99, 104, 415 N.Y.S.2d 785, 788 (1979). Plaintiff's contract action is based solely on the alleged fraudulent misrepresentations in the August 1970 Agreement[18] and accrued at the time of the execution of the contract in 1970 " 'when the claim first could have been sued upon.' " *United States v. Skidmore, Owings & Merrill,* 505 F.Supp. 1101,

1104 (S.D.N.Y.1981) (quoting *United States v. Cardinal,* 452 F.Supp. 542, 547 (D.Vt. 1978)); *see also Santos v. District Council of New York,* 619 F.2d 963, 968–69 (2d Cir.1980) (accrual when plaintiff could first successfully maintain suit); *Ply*Gem of Laurel, Inc. v. Lee,* 91 A.D.2d 513, 515, 456 N.Y.S.2d 382, 383 (1st Dep't 1982) (fraud in the inducement of contract). Under plaintiff's allegations, defendant allegedly breached the August 1970 Agreement at its execution on August 20, 1970.

Plaintiff contends, however, that the contract was not breached until February 1981 and alleges that this action is a "rare case where the breach and the harm engendered by the breach are not simultaneous events." *Brooklyn Union Gas Co. v. Interboro Surface Co.,* 87 A.D.2d 833, 834, 449 N.Y.S.2d 274, 275 (2d Dep't 1982); *see Ryan Ready Mixed Concrete Corp. v. Coons,* 25 A.D.2d 530, 535, 267 N.Y.S.2d 627, 630 (2d Dep't 1966). The Court rejects this contention. The "rare cases" when breach and harm are separate generally occur in insurance indemnity contracts or when payment or performance are subject to conditions. *See Kassner & Co. v. City of New York, supra,* 46 N.Y.2d at 550, 389 N.E.2d at 104, 415 N.Y.S.2d at 784; *Brooklyn Union Gas Co. v. Interboro Surface Co., supra,* 87 A.D.2d at 834, 449 N.Y.S.2d at 275.

■ The August 1970 Agreement was not conditioned on future payment or performance and it is clear that any contract cause of action based upon representations in the August 1970 Agreement accrued in 1970.[19] *See Santos v. District*

---

17. N.Y.Civ.Prac.Law § 213(2) (McKinney Supp. 1984) provides in relevant part that "an action upon a contractual obligation or liability express or implied" must be commenced within six years.

18. *See* Complaint, ¶¶ 54–55.

19. Plaintiff's assertion that defendants' participation in its business after the sale of Concourse Provision might work a form of "tolling" of the contractual cause of action must be rejected. *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judg-

ment at 3–4 (filed Feb. 7, 1984). The policy considerations underpinning the additional two year fraud limitations period after discovery is designed to protect plaintiffs for a limited period when underlying facts are concealed from them. Plaintiffs are protected for two additional years, but the underlying substantive actions are limited to the six year statute of limitations period as if all pertinent information was not concealed. *See Ply*Gem of Laurel, Inc. v. Lee,* 91 A.D.2d 513, 515, 456 N.Y.S.2d 382, 383 (1st Dep't 1982); McLaughlin, *Practice Commentaries,* N.Y.Civ.Prac.Law, Vol. 7B McKinney's *Consolidated Laws of New York,* at 125–26.

*Council of New York, supra,* 619 F.2d at 968–69; *U.S. Underwriters, Inc. v. Simcoe & Erie General Insurance Co.,* 532 F.Supp. 606, 611 (S.D.N.Y.), *aff'd,* 714 F.2d 119 (2d Cir.1982); *Marth v. Industrial Incomes Inc.,* 290 F.Supp. 755, 757 (S.D.N.Y. 1968). Therefore, plaintiff's contract claim is time-barred because it was not filed until 1983.[20] Accordingly, all claims in the instant action are barred by the statute of limitations and the complaint must be dismissed.

## CONCLUSION

Defendants' motion for summary judgment is granted. Fed.R.Civ.P. 56(b).

The Clerk of the Court is directed to prepare and enter Judgment dismissing the Complaint.

SO ORDERED.

Moreover, defendants' actions or inactions do not constitute tolling of a contractual cause of action. *See Valle v. Joint Plumbing Industry Board,* 623 F.2d 196, 202 & n. 10 (2d Cir.1980); *United Rubber, Cork, Linoleum & Plastic Workers of America v. Great American Industries, Inc.,* 479 F.Supp. 216, 226–27 (S.D.N.Y.1979); *Gazza v. United California Bank International,* 88 A.D.2d 968, 970, 451 N.Y.S.2d 806, 809 (2d Dep't 1982).

**20.** The contract cause of action is also dismissed by the Court's alternative holding that there is no jurisdiction for the claim. Jurisdiction is based on: (1) the federal question presented by the alleged violation of the Securities Exchange Act of 1934, *see* 15 U.S.C. §§ 78u(f), 78aa; and (2) diversity of citizenship of the parties, 28 U.S.C. § 1332(a)(1). The first jurisdictional base fails by virtue of the Court's dismissal of the § 10(b) claim. At this stage of the litigation, dismissal of the federal claim mandates dismissal of the pendent state law claim as well, unless an independent basis for jurisdiction is established. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). The second jurisdictional base fails because the Court finds that plaintiff has not satisfied the requisite jurisdictional amount in controversy. *See supra* nn. 4 & 15.