Robert L. DAVIDSON and Guenther R. Roth, Plaintiffs,

v.

Thomas C. WILSON, Winthrop Securities Co., Inc., and Winthrop Financial Associates, A Limited Partnership, a Maryland limited partnership, Defendants.

Civ. No. 4–89–762.

United States District Court,
D. Minnesota,
Fourth Division.

March 6, 1990.

See also, 763 F.Supp. 1470.

John MacFerran Lefevre, Jr., John Randolph Larson, Holmes & Graven, Minneapolis, Minn., for plaintiffs.

Elmer Bernard Trousdale, Oppenheimer Wolff & Donnelly, St. Paul, Minn., and Rebecca E. Bender, Oppenheimer Wolff & Donnelly, Minneapolis, Minn., for defendants.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

Plaintiffs Robert L. Davidson and Guenther R. Roth brought this action against defendants Thomas C. Wilson, Winthrop Securities Co., and Winthrop Financial As-

sociates seeking injunctive relief and damages. They assert claims based on state and federal securities laws, the Racketeer Influenced and Corrupt Organizations Act (RICO), and state common law. Jurisdiction is alleged under 28 U.S.C. §§ 1331 and 1332 and 18 U.S.C. § 1964(a), (c). Now before the court is defendants' motion to dismiss for failure to state a claim.

Plaintiffs contend that defendants induced them through false statements to purchase certain limited partnership interests in the Wilcap Holding Limited Partnership (Wilcap Holding). Plaintiffs purchased units in Wilcap Holding through Wilson who worked for Winthrop Securities. Winthrop Securities was owned by Winthrop Financial Associates.

Davidson alleges he was contacted by Wilson in September 1986 regarding investment opportunities in Wilcap Holding. He claims Wilson told him that an investment of $105,000 would result in a $132,000 tax loss for 1986 and cash distributions of $6,000 in 1986, $7,000 in 1987, and increasingly more thereafter. Davidson also asserts Wilson told him he would receive between $195,000 and $200,000 after the property was sold in 1996.

Roth alleges Wilson contacted Roth's agent, Jerald K. Shaw, in October 1986 regarding investment opportunities in Wilcap Holding. Roth claims Wilson told Shaw that an investment of $475,000 would result in a 3 to 1 tax write off for 1986 and in cash distributions of 8 percent per year.

Davidson and Roth claim they relied on Wilson's representations and invested $105,000 and $475,000 respectively in Wilcap Holding. They further claim Wilson knew, or should have known, that the representations he made regarding the investments were false.

In May 1989, plaintiffs brought this action. They assert causes of action under the Securities Exchange Act of 1934 and Rule 10b–5 (count 1), RICO (count 2), common law misrepresentation (count 3), common law breach of fiduciary duty (count 4), the Securities Act of 1933 (count 5), and securities acts of Minnesota and Massachusetts (counts 6 and 7). Plaintiffs seek damages, rescission of the sales, and other relief.

Defendants moved pursuant to Fed.R. Civ.P. 12(b)(6) to dismiss plaintiffs' complaint for failure to state a claim. They also seek to recover their costs and attorneys' fees in bringing this motion. Both parties submitted affidavits and exhibits, and the motion should be treated as one for summary judgment under Fed.R.Civ.P. 56. The motion involves interpretation of a contract, a task which is generally for the court. *Realex Chem. Corp. v. S.C. Johnson & Son, Inc.,* 849 F.2d 299, 302 (8th Cir.1988). On a motion for summary judgment, all material facts and inferences are construed in favor of the non-moving party. *AgriStor Leasing v. Farrow,* 826 F.2d 732, 734 (8th Cir.1987). To defeat a motion for summary judgment, however, the non-moving party must show through specific evidence that there are material facts in dispute creating a genuine issue for trial; it may not rest only upon the allegations or denials of its pleadings. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

Plaintiffs indicate that discovery is incomplete in some respects. On the issues raised in this motion, however, plaintiffs demonstrate the need for additional discovery only on the RICO claims. For purposes of this motion the assertions of the plaintiffs' memoranda and exhibits are presumed to be true.

*Rule 10b–5 claims.* Defendants assert that plaintiffs' claims under the Securities Exchange Act of 1934 and Rule 10b–5 (count 1) must be dismissed. They argue that plaintiffs' alleged reliance on Wilson's misrepresentations was not justified and therefore the claims must fail. They contend that the documents relating to the transaction clearly outlined the risks involved and indicated that statements such as those made by Wilson could not be relied upon. Defendants note that the Wilcap Holding subscription agreements, signed by each plaintiff, explicitly stated that the tax and other benefits could not be accurately predicted and that the investment involved a number of risks. They state

that plaintiffs also acknowledged reading two offering memoranda relating to the investment, the WCI Memorandum and the WH Memorandum. Defendants maintain that these memoranda outlined at length the numerous risks involved with the benefits. In light of these explicit, written notices, defendants insist that plaintiffs' reliance on Wilson's promises was not justified and can not support their claims under Rule 10b–5.

Plaintiffs claim that the contradictions between the offering materials and Wilson's statements were not apparent to them. They assert they did not receive the WH Memorandum prior to their investments. Davidson also denies receiving the WCI Memorandum before he made his investment. Plaintiffs also contend that the subscription agreement permitted them to rely on certain statements by Wilson. Section B.1.F. states:

> In evaluating the suitability of an investment in the Partnership, the Principal has not relied upon any representations or other information (whether oral or written) other than as set forth in the WCI Memorandum and WH Memorandum or as contained in any documents or *answers to questions so furnished to him by the Partnership.*

(emphasis added).

■ To recover on their Rule 10b–5 claims, plaintiffs must show a connection between Wilson's misrepresentations and their investments in Wilcap Holding. They may not recover if their reliance on Wilson's statements were not reasonable. *Zobrist v. Coal–X, Inc.,* 708 F.2d 1511, 1516 (10th Cir.1983). A number of factors are used to determine whether reliance on misrepresentations is justified, including:

> (1) the sophistication and expertise of the plaintiff in financial and securities matters; (2) the existence of long standing business or personal relationships; (3) access to the relevant information; (4) the existence of a fiduciary relationship; (5) concealment of the fraud; (6) the opportunity to detect the fraud; (7) whether the plaintiff initiated the [securities] transaction or sought to expedite the

transaction; and (8) the generality or specificity of the misrepresentations.

*Id.* Where investors are presented with written representations in the offering materials which contradict oral representations regarding the offer, the investor may not justifiably close his or her eyes to the written statements and rely on the oral ones. *See, e.g., Teamsters Local 282 Pension Trust Fund v. Angelos,* 762 F.2d 522, 529–30 (7th Cir.1985); *Platsis v. E.F. Hutton & Co.,* 642 F.Supp. 1277, 1299 (W.D. Mich.1986), *aff'd,* 829 F.2d 13 (6th Cir. 1987), *cert. denied,* 485 U.S. 962, 108 S.Ct. 1227, 99 L.Ed.2d 427 (1988). Plaintiffs are charged with constructive knowledge of the written offering materials which were available to them. *Zobrist,* 708 F.2d at 1516.

■ Plaintiffs have failed to present sufficient evidence that their reliance on Wilson's misrepresentations was reasonable under the circumstances for purposes of Rule 10b–5. Plaintiffs were sophisticated investors. Davidson was a partner in a law firm and Roth was the owner and manager of a large company. Each had substantial assets and was assisted by investment advisors in the Wilcap Holding transaction. In addition, Wilson did not act as a fiduciary of plaintiffs and he had no other relationship of trust with them. Davidson had not previously dealt with Wilson, and Roth had dealt with Wilson previously only on the project underlying the Wilcap Holding investment.

Most importantly, to the extent that Wilson's statements misled plaintiffs and concealed the fraud, it was only because plaintiffs closed their eyes to the written materials surrounding the transaction. The Wilcap Holding subscription agreement, section B.1.G., provided:

> The Principal hereby represents, warrants and agrees that ...
>
> G. The Principal recognizes that the Partnership has no financial or operating history and investment in the Partnership involves certain risks, and he has taken full cognizance of and understands all of the risks related to the purchase of WH Units, including but not limited to,

those set forth under the captions "Risk Factors" and "Income Tax Consequences" in the WCI Memorandum and "Risk Factors" in the WH Memorandum.[1]

The WCI Memorandum and WH Memorandum spelled out at length the various risks. In addition, the WCI Memorandum contained express warnings not to rely on oral statements from sales representatives such as Wilson.[2]

Davidson and Roth have failed to provide sufficient evidence that their reliance on Wilson's guarantees of Wilcap Holding's performance was reasonable under the circumstances. Their failure to make further inquiry based on the materials available to them was not justified as a matter of law. *See Kennedy v. Josephthal & Co.,* 814 F.2d 798, 804–05 (1st Cir.1987). Plaintiffs claims in count 1 should be dismissed.

*RICO and common law fraud claims.* Defendants argue that plaintiffs' RICO and Minnesota common law fraud claims (counts 2 and 3) must be dismissed. They contend that plaintiffs do not allege acts constituting a pattern of conduct sufficient to support a RICO claim. They also contend that the allegations of common law fraud are not made with sufficient particularity to meet the requirements of Fed.R. Civ.P. 9(b).

Plaintiffs have shown that they have sought, but not received, discovery relating to their RICO claims. The sufficiency of these claims need not be considered until discovery is complete. Plaintiffs have also satisfied the requirements of Rule 9(b) with specific allegations of fraud. Defendants' motion should therefore be denied with regard to counts 2 and 3.

■ *Breach of fiduciary duty claims.* Defendants contend that they did not act as fiduciaries to plaintiffs and that the claims of common law breach of fiduciary duty (count 4) must therefore be dismissed. Plaintiffs respond that defendant Winthrop Financial Associates was the general partner of Wilcap Holding and owed a fiduciary duty to plaintiffs as limited partners. Defendants reply that plaintiffs were not partners of Winthrop Financial Associates until they made their investments. Defendants assert that plaintiffs' claims relate to statements made before they invested in Wilcap Holding and that therefore no breach of fiduciary duty has been alleged.

Plaintiffs have failed to show that any of the defendants were fiduciaries to them at the time of the alleged misrepresentations. Accordingly, no breach of fiduciary duty has been demonstrated and these claims should be dismissed.

*Section 12(2) claims.* Defendants assert that plaintiffs' claims under § 12(2) of the Securities Act of 1933 (count 5) are time barred. They state that § 13 of the Act bars claims which are not brought within one year after the untrue statements are discovered or should have been discovered

---

1. Section A.3.F. and I. of the subscription agreement further states that "no assurance is given that actual results will correspond with the results contemplated" in the financial exhibits contained in the offering materials and that the tax results of the investment were "not susceptible to absolute prediction."

2. The WCI Memorandum states:
NO DEALER, SALESMAN OR OTHER PERSON IS AUTHORIZED TO GIVE ANY INFORMATION OR MAKE ANY REPRESENTATION IN CONNECTION WITH THIS OFFERING OTHER THAN AS AUTHORIZED IN THIS CONFIDENTIAL MEMORANDUM OR IN THE EXHIBITS HERETO AND, IF ANY SUCH INFORMATION OR REPRESENTATION IS GIVEN, IT MUST NOT BE RELIED UPON.
Page iv. It further states:

FINANCIAL FORECASTS AND PROJECTIONS ARE CONTAINED IN THE FINANCIAL EXHIBIT INCLUDED AS EXHIBIT A TO THIS CONFIDENTIAL MEMORANDUM (THE "FINANCIAL EXHIBIT") AND IN THE SALES MATERIALS ACCOMPANYING THIS CONFIDENTIAL MEMORANDUM. ANY PREDICTIONS AND REPRESENTATIONS, WRITTEN OR ORAL, WHICH DO NOT CONFORM TO THOSE CONTAINED IN THE CONFIDENTIAL MEMORANDUM OR THE SALES MATERIALS, ARE PROHIBITED. INVESTORS AGREE TO ADVISE THE INVESTOR PARTNERSHIP IN WRITING IF THEY ARE RELYING ON ANY SUCH INFORMATION. NO REPRESENTATIONS AS TO THE FUTURE ACCURACY OR COMPLETENESS OF THE FINANCIAL FORECASTS OR PROJECTIONS IS MADE.
Pages iii–iv.

by the exercise of reasonable diligence.[3] Defendants argue that the plaintiffs were put on notice of the alleged misrepresentations in March 1987 when each received a Schedule K–1 indicating that he had not received the benefits he had allegedly been promised for 1986. They state that Davidson's Schedule K–1 indicated a tax loss of $118,945 rather than the promised $132,000 loss, and a cash distribution of $481 instead of the promised $6,000. They further state that Roth's Schedule K–1 indicated a $447,-114.65 tax loss rather than the promised $1,425,000 loss, and a cash distribution of $1,800 instead of the promised $40,000.

Plaintiffs acknowledge that after receiving the Schedules K–1 they suspected discrepancies between the benefits they were promised and those they received for 1986. They nonetheless contend that they did not receive effective notice of Wilson's fraudulent statements until February 1989. Davidson asserts that Wilson continued to assure him that the projected cash distributions would eventually be received. Roth asserts that after receiving the Schedule K–1 for 1986, his agent, Shaw, attempted to recover the unpaid benefits from Wilson. Roth claims that Wilson continued to promise that the problem would be resolved. Plaintiffs argue that the statute of limitations should be tolled because they diligently attempted to determine whether Wilson's representations were untrue but his further misrepresentations thwarted their efforts.

Section 13 of the Securities Act of 1933 imposes a reasonable diligence standard upon plaintiffs. The statutory time period for filing claims under § 12(2) commences when plaintiffs have enough facts to be on notice of a potential claim; it does not await "leisurely discovery of the full details of the alleged scheme." *Klein v. Bower*, 421 F.2d 338, 343 (2d Cir.1970). In March 1987, plaintiffs each received a let-

ter from First Winthrop Corporation and a Schedule K–1 indicating that their tax losses and cash distributions for 1986 were well below the amounts allegedly promised by Wilson. In addition, each plaintiff signed the Wilcap Holding subscription agreement and should have known that they could not rely on Wilson's oral representations. Plaintiffs had notice of their potential claim at least by March 1987, more than twelve months prior to the commencement of this action in May 1989. They have failed to produce sufficient evidence to suggest that they exercised reasonable diligence to discover their causes of action. *See Platsis v. E.F. Hutton & Co.*, 642 F.Supp. 1277, 1290–92 (W.D.Mich. 1986), *aff'd*, 829 F.2d 13 (6th Cir.1987), *cert. denied*, 485 U.S. 962, 108 S.Ct. 1227, 99 L.Ed.2d 427 (1988). Their claims are therefore untimely, and count 5 should be dismissed.

*State securities law claims.* Defendants argue that plaintiffs' state securities law claims (counts 6 and 7) must be dismissed on the same basis as their Rule 10b–5 claims. Plaintiffs acknowledge that the state statutes on which these claims are based are state counterparts to Rule 10b–5. As discussed previously, these claims should be dismissed because plaintiffs have not shown that their reliance on Wilson's misrepresentations was justified.

Defendants have not demonstrated that they are entitled to attorneys' fees or costs relating to this motion.

Accordingly, based upon the above, and all the files, records, and proceedings herein, IT IS HEREBY ORDERED that defendants' motion is granted as to counts 1, 4, 5, 6, and 7, and those claims are dismissed with prejudice. In all other respects, the motion is denied.

---

**3.** Section 13 of the Securities Act of 1933 provides:

No action shall be maintained to enforce any liability created under section 11 or 12(2) of this title unless brought within one year after the discovery of the untrue statement or omission, or after such discovery should have

been made by the exercise of reasonable diligence.... In no event shall any such action be brought to enforce a liability created ... under section 12(2) of this title more than three years after the sale [of the security]. 15 U.S.C. § 77(m).