Northern J. CALLOWAY, individually and on behalf of LMN Productions, Inc., Plaintiff,

v.

The MARVEL ENTERTAINMENT GROUP, a DIVISION OF CADENCE INDUSTRIES CORPORATION, James Galton, Al Brodax, Michael S. Klein, Luis Quiros, Dumler & Quiros, the Shukat Company, Ltd., Scott Shukat, Peter S. Shukat, Esq., and where necessary, LMN Productions, Inc., Defendants.

The MARVEL ENTERTAINMENT GROUP, a DIVISION OF CADENCE INDUSTRIES CORPORATION, James Galton, Al Brodax, Michael S. Klein, Luis Quiros, and LMN Productions, Inc., Third-Party Plaintiffs,

v.

DUMLER & QUIROS, the Shukat Company, Ltd., Scott Shukat, Peter S. Shukat, Esq., Third-Party Defendants.

No. 82 Civ. 8697 (RWS).

United States District Court,
S.D. New York.

Feb. 26, 1986.

Bushkin, Gaims, Gaines, Jones & Stream, New York City (Jeffrey Strauss, of counsel), for defendants Michael S. Klein and LMN Productions, Inc.

Brown, Wood, Ivey, Mitchell & Petty, New York City (Stuart J.M. Breslow, of counsel), for defendant Luis Quiros.

Sonnenfeld, Scherf & Richman, New York City (Richard E. Scharf, of counsel), for defendants Marvel Entertainment Group and James Galton.

Arnoff & Merin, P.C., New York City (Norman Arnoff, of counsel), for third-party defendant Peter Shukat.

D'Amato & Lynch, New York City (Richard G. McGahren, of counsel), for third-party defendant Dumler & Quiros.

Brookman & Brookman, P.C., New York City, for third-party plaintiffs Klein and LMN Productions, Inc.

Santora & McKay, New York City (Robert McKay, of counsel), for third-party plaintiff Al Brodax.

Pavelic & LeFlore, New York City (Ray L. LeFlore, of counsel), for plaintiff.

Sol V. Slotnik, New York City, for third-party defendants Scott Shukat and Shukat Co., Ltd.

SWEET, District Judge.

This action for copyright infringement was scheduled for trial on February 10, 1986, after several years of pretrial proceedings and numerous previous opinions on pretrial motions. Those opinions, dated March 17, 1983, 564 F.Supp. 107 (S.D.N.Y. 1983), June 30, 1983, December 22, 1983, July 3, 1984, October 15, 1984, January 16, 1985, January 29, 1985, 603 F.Supp. 810 (S.D.N.Y.1985), and August 21, 1985, fully set forth the parties, the factual circumstances and the legal claims arising therefrom. On January 31, 1986, all parties, Northern J. Calloway ("Calloway"), the plaintiff; The Marvel Entertainment Group ("Marvel"), James Galton ("Galton"), Al Brodax ("Brodax"), Michael S. Klein ("Klein"), Luis Quiros ("Quiros"), the defendants and third-party plaintiffs; and The Shukat Company, Ltd. ("SCL"), Scott Shukat ("Scott") and Peter Shukat ("Peter"), the third-party defendants, sought pretrial relief. Each of these motions shall be decided individually below.

**Calloway's Motion to Add State Law Claims**

Calloway moved for leave to amend his complaint in order to reinstate several state law claims against third-party defendants Peter and Scott Shukat and SCL. These claims were originally asserted in

Calloway's amended complaint dated July 29, 1983. However, the opinion dated December 22, 1983 granted defendants' motion to dismiss, holding that Calloway had not stated any basis for copyright liability as to Peter, Scott and SCL and, upon dismissal of the federal claim, all state law claims were dismissed under the guiding principles of pendent jurisdiction. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Peter, Scott and SCL returned to the action as third-party defendants when the defendants/third-party plaintiffs filed third-party complaints dated January 18 and January 27, 1984. In essence, these third-party complaints restated the same state law claims relating to fraud, misrepresentation and breach of an escrow agreement as were originally asserted by the plaintiff. By opinion dated January 29, 1985, some of these third-party claims were dismissed due to the lack of privity between the third-party opponents with regard to the escrow agreement. *See* January 29, 1985, 603 F.Supp. at 812.

Discovery has now been completed and on the eve of trial, Calloway now seeks to reinstate all his state law claims against Peter and Scott Shukat and SCL.

Calloway's state law claims against Peter, Scott and SCL may be adjudicated only through the exercise of pendent jurisdiction. Pendent jurisdiction requires an extension of a federal court's power beyond the statutory restrictions on federal jurisdiction enacted by Congress and thus may be exercised only upon satisfaction of a two-part test regarding whether this court has the power to hear the state law claim and, if so, whether such an exercise of pendent jurisdiction would be a wise exercise of judicial power. *See Independent Bankers Association v. Marine Midland Bank,* 757 F.2d 453 (2d Cir.1985); *Leathers Best, Inc. v. S.S. Mormaclynx,* 451 F.2d 800, 809 (2d Cir.1971).

As for the first part, the judicial power to exercise pendent jurisdiction depends upon a "common nucleus of operative fact." *Gibbs, supra,* 383 U.S. at 725, 86

S.Ct. at 1138. While the third-party complaints initially arose out of the same allegations that were presented by Calloway's dismissed claims, that common nucleus has been altered by the intervening decision of January 29, 1985 which dismissed portions of the third-party claims. Thus, Calloway's present motion seeks to add far broader allegations and factual matters which are not now within the ambit of the third-party claims. Specifically, the third-party complaint included both a fraud claim against Peter, Scott and SCL for their alleged participation in forging Calloway's signature on an agreement dated June 8, 1981 and in misrepresenting Calloway's execution of that agreement and also a breach of contract claim regarding the violation of an escrow agreement dated February 8, 1982. The third-party claim on the alleged escrow agreement was dismissed since any such agreement would only have been between Calloway and Peter, not between Peter and the third-party plaintiffs. Therefore, the third-party plaintiffs were not entitled to damages for any breach of contract.

In addition, the third-party complaint never contemplated litigation on the facts underlying several of the state law claims now sought to be reinstated by Calloway. As asserted in his fifth and sixth causes of action, Calloway alleged that Peter was liable for malpractice in his representation of Calloway during this period and that Scott and SCL were liable for breach of their fiduciary duty in their advisory capacity as Calloway's personal managers. Each of these claims involves legal issues and facts which extend well beyond those addressed by the third-party complaint.

Pendent jurisdiction will be exercised only over Calloway's claim against Peter, Scott and SCL for fraud and misrepresentation in connection with the June 8, 1981 option agreement because only with respect to this claim does there exist the requisite common nucleus of facts. Since the facts regarding the fraud claim of Calloway and that of third-party plaintiffs against Peter, Scott and SCL are practically identical and since these issues have

48

been fully developed by discovery on the third-party complaint, there will be no prejudice to the third-party defendants in permitting the reinstatement of this particular claim. Moreover, the similarity of these claims indicate that judicial economy would be well served by allowing this particular fraud claim to be litigated as a part of this action. Thus the factors which guide this court's discretion to exercise jurisdiction over Calloway's claim for fraud—"judicial economy and convenience, fairness to the parties and the degree of uncertainty in the relevant state law"—favor the adjudication of Calloway's fraud claim. *Independent Bankers, supra,* 757 F.2d at 464. Delay alone is not reason to deny Calloway's motion. *See State Teachers Retirement Board v. Fluor Corp.,* 654 F.2d 843 (2d Cir.1981).

With regard to Calloway's remaining state law claims, pendent jurisdiction will not be exercised because of the lack of common nucleus of facts and the circumstances of this case. As noted above, after a long pretrial period, this case is now ready for trial. Depositions and other discovery have been conducted without regard for the issues of malpractice, breach of fiduciary duty and breach of the escrow agreement. Judicial economy and convenience would not be served by reopening the discovery to allow for the renewal of these state law claims. Therefore, Calloway's motion to amend will be granted only insofar as it seeks to reinstate the pendent state claim of fraud and misrepresentation in connection with the June 8, 1981 option agreement.

### Defendants' Motion to Amend Answers

■ Marvel, Galton, Brodax, Klein and LMN have moved pursuant to Rule 15(a), Fed.R.Civ.P., for leave to amend their answers to include three additional affirmative defenses: (a) the defense of fair use of copyrighted material; (b) the defense of apparent authority, and (c) the defense of equitable estoppel. The motion to add affirmative defenses, unlike that of Calloway to add pendent claims, does not infringe upon any federal jurisdictional limitations

of this court. Therefore, in accordance with the dictates of Rule 15(a), leave to amend will be freely granted when justice so requires.

Although it is inconvenient to allow amendment of answers immediately before trial, leave to amend will be granted to defendants since there is no indication of undue delay, no need for additional discovery on these issues, nor any indication that such amendments would prejudice Calloway. *See State Teachers, supra,* 654 F.2d at 856.

### Motions for Discovery Related Relief

■ Calloway has moved to reject the Special Master's Report of January 13, 1986 which recommended contempt sanctions and further discovery following Calloway's refusal to answer certain questions at his pretrial deposition. Defendants have moved to confirm the January 13 Report with respect to the contempt sanctions and have requested further discovery going beyond that recommended by the Special Master.

Pretrial discovery has revealed that Calloway has had a history of mental illness and treatment at times relevant to this litigation. In September, 1980, Calloway severely beat a woman and damaged property which resulted in civil litigation and criminal prosecution. The criminal charges were dismissed in January, 1982, after a hearing in which Calloway pled temporary insanity. During the same time period he received treatment, both psychotherapeutic and chemical, from professionals in psychiatry. Defendants have sought to obtain discovery of all materials relevant to Calloway's psychiatric condition including all writings concerning confidential discussions between Calloway and his treating professionals.

Following the Special Master's report of November 13, 1985, as supplemented on November 27, which recognized a patient-psychiatrist privilege, the deposition of Calloway was continued on December 9, 1985. At that deposition, Calloway refused to answer several questions which he and his counsel deemed to be within the privilege

as recognized by the Special Master's report. As discussed in the most recent report by the Special Master, dated January 13, 1986, Calloway was directed to answer the four types of questions after the Special Master considered and rejected Calloway's request for application of the privilege to those four areas. The particular questions which Calloway refused to answer are as follows:

1. Does Calloway/Marvel Exhibit A for identification refresh your recollection as to the court in Nashville, Tennessee, at which you were in attendance on January 29, 1982?

2. Do you recall ever being told that, at any time between September 17, 1980, through and including May 31, 1982, you suffered a bi-polar disorder, manic type?

3. Do you recall that, upon the conclusion of your confinement at the Middle Tennessee Health Institute, you were told by anyone that you should continue to receive psychiatric care and to take certain medication concerning your mental condition?

4. Mr. Calloway, did you apprise Dr. Butts at any time prior to March 27, 1981, that you intended to be in Nashville, Tennessee, in connection with a court proceeding there?

Given Calloway's failure to answer the questions after his specific direction, the Special Master recommended that Calloway and his counsel be held in contempt and fined $1,000.00.

First, for the reasons stated in the Special Master's carefully considered report of November 13, 1985, I adopt his recommendation that recognizes a privilege for communications between a psychiatrist and his or her patient. As suggested by Rule 504 of the evidentiary rules proposed by the Judicial Conference and approved by the Supreme Court, the privilege should extend to "confidential communications, made for the purposes of diagnosis or treatment of [the patient's] mental or emotional condition." While Congress has not enacted this specific privilege into the Federal Rules of Evidence, this standard may appropriately serve as a guide to this court's determination of the existence of the privilege on a common law basis. Fed.R.Evid. 501; *In re Zuniga*, 714 F.2d 632, 636–37 (6th Cir. 1983). Therefore, Calloway will not be forced to disclose communications which fall within the above definition. Of course, this recognition of Calloway's privilege with respect to his communications with psychiatric professionals does not protect the basic facts regarding Calloway's treatment, *see Zuniga, supra*, 714 F.2d at 640, which are understood to have been disclosed.

Question 1 does not lie within any claim of privilege. Question 1 refers to an exhibit which is the transcript of the judicial proceedings against Calloway in which his plea of temporary insanity was accepted. Since Calloway voluntarily offered the testimony of treating psychiatric professions in order to substantiate his plea, the privilege has been waived as to that testimony. *See, e.g., In re Penn Central Commercial Paper Litigation*, 61 F.R.D. 453, 463–64 (S.D.N.Y.1973). Calloway has also objected to Question 1 apparently on the basis that since there was no criminal conviction, that proceeding is not within the scope of discovery permitted by an earlier ruling by this court. *See* May 21, 1985 order at ¶ (d). Calloway's refusal to answer is not appropriate since the question of whether or not Calloway was convicted of a crime does not determine whether Question 1 was relevant but only whether or not the Tennessee judgment could be admissible evidence. *See* Fed.R.Evid. 609. Thus the only basis for forbidding questioning on the Tennessee proceedings would be a finding that its relevance is outweighed by its potential prejudice. Fed. R.Evid. 403. While this court agrees with the Special Master that the factual circumstances surrounding the Tennessee incident are unduly prejudicial, as long as those underlying facts are not stated, there is no prejudice in using the transcript to refresh Calloway's recollection as to his presence at a court proceeding at a particular time. Thus, Question 1 is appropriate.

In accordance with the privilege thus recognized, Calloway's objections to Questions 2 and 3 are well founded as to any communications to or from psychiatric professionals regarding his mental condition except those communications which have been made public. In contrast, Question 4 does not infringe upon the psychiatrist/patient privilege since, although it clearly requires disclosure of a communication between psychiatrist and patient, the communication does not relate to any requests for treatment or any other information relating to Calloway's course of treatment. As with the attorney-client privilege, the psychiatric privilege extends only to those communications for which the professional's advice and counsel has been sought. The patient's travel plans do not fall within this scope.

Calloway is therefore directed to respond to Questions 1 through 4 in accordance with this opinion by affidavit to be submitted to this court and all parties by February 28, 1986. As to the second and third questions, any advice not covered by the privilege under the circumstances described in this opinion will be set forth, and any communication which is subject to the privilege will be identified as to the parties to the communication, the dates of such communication, and the basis for the exercise of the privilege. Any follow-up questions must be submitted together with the other interrogatories which may be submitted on March 3. If necessary the defendants may also submit interrogatories by March 3, 1986 as to the names of physicians consulted, the dates of consultations, the authenticity of documents indicating course of treatment or medication and the chemical test results regarding medications taken. Calloway will answer any such interrogatories by March 10, 1986.

■ Defendants have also challenged numerous specific rulings of the Special Master regarding the psychiatric/patient privilege. Specifically, they assert that Calloway's statements made during his treatment by the Tennessee Department of Mental Health are not properly within the privilege. I uphold the Special Master's rulings on these statements because the medical records, progress reports, and testimony are clearly based on conversations between Calloway and the treating professionals which were conducted for the purposes of psychiatric treatment. As discussed above, only as to those communications disclosed in the Tennessee criminal proceedings will the psychiatric privilege be deemed to have been waived. There has been no general waiver of the privilege, nor has Calloway selectively disclosed confidential communications in order to obtain an advantage.

■ Defendants also challenge the confidentiality of several letters. According to the defendants, in an April 28, 1982 letter from Lionel Barrett to Peter Shukat, Barrett advised Shukat that Calloway had telephoned him to tell of certain beliefs regarding the Tennessee incident. Barrett was local Tennessee trial counsel in the criminal and civil proceedings while Shukat was Calloway's regular New York counsel. The communication between Barrett and Calloway as recited in the letter is covered by the attorney/client privilege because the circumstances of the letter indicate that the communication would not have been made except for the former attorney/client relationship between Calloway and Barrett. Calloway was discussing the circumstances underlying the earlier legal proceedings, and considering his confused state of mind apparent from the context of the letter, the privilege should not be deemed waived merely because Calloway contacted his former attorney rather than his regular counsel.

■ As to another letter, however, I find that the psychiatric/patient privilege has been waived. On April 30, 1982, Dr. Hugh Butts wrote to a United States District Attorney for the Southern District of New York to inform him that Calloway would not be able to respond to a grand jury subpoena because he was at that time mentally unstable. This statement, like those relevant to the Tennessee proceedings, was a voluntary disclosure of Calloway's condi-

tion and, therefore, the privilege as to that letter has been waived.

Aside from that discovery described above, no further discovery regarding Calloway's mental condition will be granted. From the extensive and detailed discussions by counsel at the January 31 hearing on this motion, defendants have demonstrated their detailed knowledge of the diagnosis of Calloway's mental illness and the medications taken by him. This knowledge provides ample basis for preparing an expert witness and for cross-examination to challenge Calloway's testimony at trial. Since Calloway's mental condition relates principally to credibility, further inquiry into Calloway's confidential discussions with medical personnel is unnecessary. *Compare* 2 *Weinstein's Evidence* ¶ 504[07] (1985).

Calloway's refusal to answer Questions 1 and 4 at his deposition of December 9, 1983 merits sanctions of $500 to be divided equally between Calloway and his counsel.

**Quiros Discharge in Bankruptcy**

■ Luis Quiros has moved to dismiss Calloway's claims against him on the grounds that his voluntary bankruptcy proceeding has discharged all debts including any allegedly owed to Calloway. In August, 1983, Quiros filed a bankruptcy petition pursuant to Chapter 13 of the Bankruptcy Code, 11 U.S.C. § 1301 *et seq.*, with the United States Bankruptcy Court for the Southern District of New York. As a consequence of this proceeding, Quiros obtained a discharge pursuant to 11 U.S.C. § 1328(a) on January 14, 1986.

The Chapter 13 discharge obtained by Quiros was a full compliance discharge, *see* 11 U.S.C. § 1328(a), which entitles the debtor to the discharge of a broader category of debts than otherwise available under Chapter 7 proceedings. *See In re Esser*, 7 C.B.C.2d 149 (Bankr.E.D.Mich.1982); *Memphis Bank & Trust Co. v. Whitman*, 692 F.2d 427 (6th Cir.1982); 5 L. King, *Collier's on Bankruptcy* ¶ 1328.01 (1985).

Thus, Calloway's reliance on § 523(a) of the Bankruptcy Code is unavailing since Quiros' Chapter 13 proceeding discharged all such debts except those falling under the classification of alimony and child support, 11 U.S.C. § 523(a)(5), a category which is not pertinent to Calloway's copyright claim. Since the effect of a discharge is to void any judgments already rendered against the debtor, § 524(a)(1), and to enjoin "the commencement or continuation of an action ... to collect, recover or offset any such debt as a personal liability of the debtor," § 524(a)(2), Quiros' discharge bars Calloway's unliquidated claims against Quiros. Any remedial relief to be sought by Calloway in challenging the validity of Quiros' discharge must be pursued in the bankruptcy courts. *See* 11 U.S.C. § 1328(e).

On the other hand, Calloway's complaint also seeks injunctive relief against Quiros and all other defendants pursuant to 17 U.S.C. § 502. Since this equitable claim does not involve the collection of any debt, it is not stayed by the discharge. Quiros' motion to dismiss is therefore granted as to all claims except that for equitable relief.

**Collateral Estoppel**

■ As indicated by the record of the hearing of January 31 and by a courtesy copy of an order to show cause, third-party defendants The Shukat Company, Ltd. ("SCL") and Scott Shukat seek summary judgment dismissing the third-party complaints on the grounds that a prior proceeding has determined all issues in their favor. Since neither the order to show cause nor any supporting exhibits have been filed with the clerk of the court, this motion will not be considered.

**Motions Objecting to Deposition Errata Sheets**

■ Calloway has moved to exclude all changes in deposition testimony of Klein, or ... the alternative, to permit the further deposition of Klein regarding the changes in testimony. Defendants Brodax and Klein in turn have objected to the changes in deposition testimony of Nancy Beaulieu, which were apparently delivered by Callo-

way's counsel in response to the changes in Klein's deposition testimony.

Klein's deposition was taken on July 2 and July 8, 1985. Six months later, on January 17, 1986, Klein signed and submitted an errata sheet which altered several responses in the deposition transcript. The proposed changes went beyond the mere correcting of typographical errors or mistakes in transcription. Briefly as an example of the changes included in the eight-page errata sheet, Klein has changed numerous answers from "No" to "Yes," and has provided explicitly detailed responses where the transcript indicates no independent recollection.

Klein's six-month delay in returning such an errata sheet is inappropriate in view of the requirements of Rule 30(e), Fed.R. Civ.P., which requires the signature of the witness together with any changes in form or substance to be made within thirty days of its submission to him. Noncompliance with this rule should be taken as a waiver of the right to examine and read the transcript. *Id.* The delay can also be deemed a waiver of the defendants' right to object to alleged errors in the transcript because they were not raised "with reasonable promptness after such defect is, or with due diligence might have been ascertained." Fed.R.Civ.P. 32(d)(4).

Therefore, Calloway's motion to exclude the changes in Klein's deposition testimony and the defendants' identical responsive motion to exclude Beaulieu's changes will each be granted.

Final pretrial orders will be due on March 10, 1986 and the case will be placed on the trial calendar at that time.

IT IS SO ORDERED.