Stanley B. BLOCK, John C. Blazier, Joseph A. Clements, Dan W. Deloney, Wyatt C. Deloney, Ralph Diorio, Robert A. Epstein, Charles B. Filleman, Glenna and Robert Goodacre, Joe E. Goodwin, Sarah Grace, Edmond J. Harris, Wesley H. Hocker, Roman Hought, W.R. Jacobsen, Robert L. Jordan, Ted Kotcheff, Frank H. Kush, David Laman, Hurdle

---

H. Lea, David D. Maytag, Doyle E. Montgomery, Henry Nobel, Ron Maller, William H. Plummer, Robert P. Roche, Edward E. Rotenberry, Walter Rotenberry, Michael J. Scarfia, Bill R. Sparks, and Lewis F. Wood, Plaintiffs,

v.

FIRST BLOOD ASSOCIATES, A. Frederick Greenberg, Richard M. Greenberg, Anabasis Investments, N.V., Carolco Pictures, Inc., Goldschmidt, Fredericks & Oshatz, Barry I. Fredericks, Henry J. Goldschmidt, Lawrence E. Goldschmidt, Michael P. Oshatz, Leonard A. Messinger, Sanford J. Schlesinger, Edward I. Sussman, Mark A. Meyer, and Touche Ross & Co., Defendants.

No. 86 Civ. 8811 (RWS).

United States District Court, S.D. New York.

July 12, 1990.

As Amended July 16, 1990.

Sirota & Sirota, New York City, for plaintiffs; I. Stephen Rabin, Rachell Sirota, of counsel.

Shea & Gould, New York City, for defendant Touche Ross & Co.; Richard M. Goldstein, John P. Stigi, III, of counsel.

## OPINION

SWEET, District Judge.

Defendant Touche Ross & Co. ("Touche") has moved under Rule 12(b)(6),

Fed.R.Civ.P., to dismiss the amended complaint of the plaintiffs Stanley B. Block *et al* ("Block") on statute of limitations grounds, for failure to state a cause of action and alternatively under Rule 9(b), Fed.R.Civ.P., for failure to plead fraud with particularity. For the reasons set forth below, the amended complaint is dismissed, and leave to replead within twenty (20) days is granted.

*Prior Proceedings*

The original complaint in this action was filed on November 17, 1986. Following various discovery proceedings and pretrial conferences, on July 9, 1987 a previous motion on behalf of defendants Andrew Vajna ("Vajna"), Mario Kassar ("Kassar"), Carolco Pictures, Inc. ("Carolco") and Anabasis Investments, N.V. ("Anabasis") to dismiss the complaint was denied.

On July 6, 1988 a further motion to dismiss on behalf of Vajna and Kassar was granted, a motion by Block for class certification was denied, a motion to retransfer the action to the United States District Court for the Central District of California was denied, and motions for summary judgment were denied.

On July 14, 1989 the complaint was amended to include claims against Touche and against Goldschmidt, Fredericks & Oshatz and its partners Barry I. Fredericks, Henry J. Goldschmidt, Lawrence E. Goldschmidt, Michael P. Oshatz, Leonard A. Messinger, Sanford J. Schlesinger, Edward I. Sussman and Mark A. Meyer for violation of § 10(b) of the Securities Exchange Act of 1934 (the "Act") and Rule 10b–5 promulgated thereunder; common law fraud and deceit; negligence and malpractice; negligent misrepresentation; breach of contract against Anabasis and Carolco; and breach of fiduciary duty against the Partnership and the Greenbergs.

These motions followed in the fall of 1989 and by agreement of the parties were argued and submitted on March 16, 1990.

*The Amended Complaint*

According to the amended complaint, defendant First Blood, a limited partnership, was formed in July 1981 under the laws of the State of New York for the purported purpose of acquiring all right, title and interest in the Sylvester Stallone film, "First Blood," *i.e.,* "Rambo I." Complaint ¶ 6. In September 1982, First Blood agreed to acquire the motion picture from Anabasis. Soon after, First Blood and other defendants offered to investors twenty-eight units of limited partnership interests at $200,000 per unit, with fractional units available, by means of a private placement offering memorandum (the "Memorandum"). Complaint ¶¶ 12–13. According to the Memorandum, the limited partnerships were to share in ninety-eight percent of the net profits, losses and cash flow of First Blood. Complaint ¶ 13.

The complaint alleges that First Blood did not in fact acquire all of the rights to the film and indeed failed to acquire the rights necessary for the limited partnership to earn a profit from the distribution and other uses of the film. Complaint ¶¶ 14–23. Block claims that because of the undisclosed failure to acquire all of the rights to the film, First Blood could under no circumstances earn a profit, thus prompting the Internal Revenue Service to disallow the tax deductions claimed by the plaintiff, which occurred in October 1987 on grounds that the Partnership investment was a tax-motivated rather than profit-motivated transaction. Complaint ¶¶ 24–25.

Although the film was a "huge success," plaintiffs claim to have spent an additional $41,669 in interest and expenses and received less than $11,000 in distributions on each $200,000 limited partnership unit. Complaint ¶ 21. Plaintiffs seek recovery from some or all defendants of the amounts invested in and expended on account of the investment in First Blood, the amount of additional taxes, interest and penalties due, monies due and owing as a result of revenues generated by the film and punitive damages.

*The Touche Report Allegations*

The claims in the amended complaint against Touche are based on its preparation of a "Report on Projected Statements of Tax Basis Operations, Cash Flow and

After Tax Results for an Investor in the 50% Tax Bracket for Eleven Years Ending December 31, 1992" (the "Report") that was allegedly included in the private placement offering memorandum of the limited partnership interests in First Blood Associates ("First Blood"). The report consists of a three-page "Accountants' Report" followed by twenty-one pages of charts and projection notes, hypotheses and assumptions.

The complaint alleges that (1) the Touche Report was false and misleading because Touche did not analyze the projections in the manner represented in the report, *i.e.*, that it did not read the Memorandum, check the computation of the projections, challenge the internal consistency of the projections and inquire into factors that might influence the financial results, (2) the Report failed to disclose that there was virtually no possibility that the investors would realize a profit no matter how successful the movie was, that the assumption that investors would realize a profit was unreasonable and not objective, and that due to the unlikelihood of ever achieving a profit, the tax benefits in the projection would be disallowed, (3) the projections contained in the Report were inherently false because they were not based upon the most likely results, and (4) the Report and engagement violated professional ethical rules and Touche internal guidelines. Complaint ¶¶ 26–29. The amended complaint further alleges that Touche participated in the scheme to defraud by permitting the inclusion in the Memorandum of an opinion attesting to the internal consistency of projections which were in fact internally inconsistent.

*The Report*

The Report stated:

We have analyzed the accompanying financial projections referred to above, such analysis being comprised of reading the Confidential Private Placement Memorandum and statement of projection notes, hypotheses and assumptions, checking the compilation of the projections from stated hypotheses and assumptions, challenging the internal consistency of the projections, and inquiring about factors that may influence the financial results. Based on our analysis, we believe the projections have been properly compiled on the stated bases and the bases for the projections are adequately described.

The Report also stated in part:

[S]ome of the assumptions inevitably will not materialize and unanticipated events and circumstances may occur … [A]ctual financial results achieved by the proposed partnership and the actual cash distributed and taxable income or loss and other tax results allocated to individual limited partners may vary from the projections, and the variations may be material.

\*　　\*　　\*　　\*　　\*　　\*

However, because relevant information which may be significant may not have been considered in developing the projections and our analytical procedures were limited, we are unable to and do not express a conclusion on the completeness and reasonableness of the assumptions as a basis for predicting the financial results of the partnership and the availability and timing of income tax results to individual limited partners during the projection period.

\*　　\*　　\*　　\*　　\*　　\*

Because the complexity of the federal and state laws which may be applicable for an individual partner, and of other legal and economic matters involved, each prospective limited partner should consult with his or her personal tax and investment advisors.

\*　　\*　　\*　　\*　　\*　　\*

The accompanying projected statements of tax basis operations, cash flow and after tax results … and the related statement of projection notes, hypotheses and assumptions were prepared by the general partners …

*The Statute of Limitations Bars the Fraud Claims*

 Block has asserted against Touche a claim under § 10(b) of the Act in Count I

and in Count II a claim for common law fraud. These fraud claims, governed by the two-tiered statute of limitations contained in sections 213 and 203(f) of the New York Civil Practice Law and Rules ("CPLR"), must be brought within two years of the time plaintiff discovered or could have discovered the fraud with reasonable diligence or within six years of the fraud itself, whichever is later. *IIT v. Cornfeld*, 619 F.2d 909, 928–29 (2d Cir. 1980).[1]

■■■■ A fraud cause of action arises upon the making of a misrepresentation causing detrimental reliance. *See Marathon Enterprises, Inc. v. Feinberg*, 595 F.Supp. 368, 371–72 (S.D.N.Y.1984) (fraud was committed when plaintiffs obtained stock in purported reliance on defendant's financial statements); *Rickel v. Levy*, 370 F.Supp. 751, 755 (S.D.N.Y.1974). In this case, the alleged fraud occurred no later than October 1982 when plaintiffs invested in purported reliance on the report. The Amended Complaint recites:

> In 1982 defendants First Blood and the Greenbergs, by means of the Memorandum, offered to investors twenty-eight Units of Limited Partnership Interest at a price of $200,000 per Unit with fractional units to be available.

Complaint ¶ 12. It is further alleged that the Touche Report "appeared in the Memorandum with its consent." Complaint ¶ 10, and that plaintiffs purchased in reliance on the Report in October 1982.

The amended complaint naming Touche was filed on July 19, 1989, more than six years from the alleged fraud by Touche. Moreover, it was on November 14, 1986 that Block first brought suit against the insider-defendants, "relat[ing] to a private placement memorandum issued by First Blood." *See Block v. First Blood Associates*, 691 F.Supp. 685, 688–89 (S.D.N.Y. 1988). Thus, more than two years elapsed prior to the amendment of the suit, notwithstanding that the memorandum sued upon in 1986 contained the Touche Report.

Block urges that the six-year limitations period is not measured from the date of the defendant's last fraudulent act, but from when plaintiff suffers a loss as a result thereof. *Stull v. Bayard*, 561 F.2d 429, 432 (2d Cir.1977), *cert. denied*, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 783 (1978); *Sack v. Low*, 478 F.2d 360, 365–66 (2d Cir.1973); *Dolmetta v. Uintah National Corp.*, 712 F.2d 15, 19 (2d Cir.1983). Here, plaintiff contends, investors did not suffer a loss attributable to Touche until the IRS disallowed their tax deductions in 1987, citing *Zola v. Gordon*, 685 F.Supp. 354 (S.D. N.Y.1988), as support for the proposition that the statute of limitations for a § 10(b) claim arising from investment in a tax shelter limited partnership accrues upon receipt of the IRS disallowance notice, as well as *Bauman v. Centex Corp.*, 611 F.2d 1115, 1119 (5th Cir.1980), which dealt with the date of accrual of an action against an accountant in connection with the preparation of a tax return as the date of disallowance.

To buttress his position, Block notes that 10b–5 claims require the plaintiff to establish both transaction and loss causation. *Schlick v. Penn–Dixie Cement Corp.*, 507 F.2d 374, 380 (2d Cir.1974), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *Bennett v. U.S. Trust Company*, 770 F.2d 308, 313 (2d Cir.1985), *cert. denied*, 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986). "In addition, to the significance of the misrepresentations in

---

1. CPLR § 213 provides that the following actions must be commenced within six years: ...
 8. an action based upon fraud; the time within which the action must be commenced shall be computed from the time the plaintiff or the person under whom he claims discovered the fraud, or could with reasonable diligence have discovered it.

CPLR 203(f) states that:
 where the time within which an action must be commenced is computed form the time when facts were discovered or from the time when facts could with reasonable diligence have been discovered, or from either of such times, the action must be commenced within two years after such actual or imputed discovery or within the period otherwise provided, computed from the time the cause of action accrued, whichever is longer. CPLR 203(f). *See also Marathon Enterprises, Inc. v. Feinberg*, 595 F.Supp. 368, 371 (S.D.N.Y. 1984).

the chain of causation, 'loss causation' requires that the damage complained of be one of the foreseeable consequences of the misrepresentation." *Manufacturers Hanover Trust Co. v. Drysdale Securities Corp.*, 801 F.2d 13, 21 (2d Cir.1986), *cert. denied sub nom. Arthur Anderson & Co. v. Manufacturers Hanover Trust Co.*, 479 U.S. 1066, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987); *see also Oleck v. Fisher*, [1979 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 96,898 at 95,702-03, 1979 WL 1217 (S.D. N.Y.1979), *affirmed*, 623 F.2d 791 (2d Cir. 1980). From these authorities Block concludes that until the tax disallowance he could not attribute any loss to misrepresentations of Touche.

However, Block does not allege any fraudulent concealment by Touche, and in the absence of such an allegation, the reasoning in *O'Brien v. National Property Analysts Partners*, 719 F.Supp. 222, 232 (S.D.N.Y.1989) is applicable. There, the Honorable Peter K. Leisure held that knowledge of facts that lead to an adverse IRS determination—as opposed to the later receipt of a notice to that effect—triggers the running of the statute of limitations:

> Where an offering memorandum discloses the transactions that subsequently lead to IRS challenges, plaintiffs' efforts to rely on an IRS report as the source of discovery of fraud are insufficient.

719 F.Supp. at 232 n. 11.

In *General Builders Supply Co. v. River Hill Coal Venture*, 796 F.2d 8 (1st Cir. 1986), investors in a coal mining limited partnership brought suit against the promoter, law firm and financial advisor involved in the venture, as well as the accounting firm that reported on a pro forma financial analysis, claiming that they were defrauded because the management of the venture never intended to make a profit, a fact allegedly never revealed to them, thus negating the possibility of their receiving tax benefits. The district court dismissed the complaint, holding that plaintiffs had recognized "storm warnings" of the alleged fraud long before their receipt of IRS notices, and thus concluded that "the statute began to run prior to receipt by the investors of their disallowance notices from the IRS." 796 F.2d at 10. The First Circuit affirmed.

Indeed, in *Zola, supra*, the court referred to plaintiffs' receipt of an IRS appraisal report as a "decisive relevant event" not because it triggered the accrual of the claim but rather because it was concrete, indisputable evidence that plaintiffs knew (or should have known) that they had a claim no later than that date. *Zola*, 685 F.Supp. at 365. Also, in *Bauman, supra*, the court there held, applying Texas common law:

> If, however, the act of which the injury is the natural sequence is of itself a legal injury to plaintiff, a completed wrong, the cause of action accrues and the statute begins to run from the time the act is committed, even where little, if any, actual damage occurs immediately upon commission of the tort.

611 F.2d at 1118.

The gravamen of the Amended Complaint against Touche is that the accounting firm misrepresented its work, that its Report was internally inconsistent, containing as it did a projection of future profits and losses on the assumption that favorable tax treatment would be available, an impossible condition under the true facts which established that the partnership could not be profitable. However, knowledge of this basic misrepresentation was set forth in the initial complaint, filed in 1986, in the following terms:

> [n]o ruling has been sought from the IRS that the Partnership will be treated as the sole owner of the Film for Federal income tax purposes and it is not contemplated that any such ruling will be sought. The IRS may seek to characterize the relationship between Anabasis (and/or any subdistributor(s)) and the Partnership as a joint venture, license or loan agreement. Accordingly, although Special Counsel is of the opinion that the Partnership is the sole owner of the Film, if the IRS were successful in asserting such a position, there would be serious adverse tax consequences to the Partnership including a loss or reduction

of the depreciation which the Partnership can claim in respect of the Film.

Of course, as noted in certain of the prior proceedings, prior to the issuance of the unfavorable determination by the Revenue Agent, Block was on the horns of a dilemma, seeking on the one hand damages for misrepresentation as to the profitability of the partnership and on the other not wishing to establish the grounds for invalidating the tax write-off. Whatever difficulty that created for the plaintiff in terms of legal theories of liability, it is not disputed here that whatever action Touche took, whatever part it played in the entire scheme, took place at or before the time of the issuance of the Memorandum containing the Report in 1982. The Revenue Agent's disallowance of the benefits in 1987 simply confirmed the effect noted in the allegations of the initial complaint and in no way affected or altered whatever it was that Touche had already done. Confirmation is not synonymous with discovery.

Therefore, any alleged loss for a violation of § 10(b) that was allegedly caused by Touche was caused in 1982 when Touche prepared its Report and when Block invested in purported reliance thereon. The statute of limitations began to run at that time, and the claim is time-barred now.[2]

*Statute of Limitations for Accountants' Malpractice and Negligent Misrepresentation*

The statutes of limitations for the accountants' malpractice and negligent misrepresentation claims (Counts III and V), run from the dates of the "injurious purchase" made in purported reliance upon the accountants' report. *Poloron Products, Inc. v. Lybrand Ross Bros. & Montgomery*, 72 F.R.D. 556, 562 (S.D.N.Y.1976); *Fleet Factors Corp. v. Werblin*, 114 A.D.2d 996, 997, 495 N.Y.S.2d 434, 435–36 (2d Dept 1985). Accordingly, in the absence of some claim of concealment or other theory that would have the effect of tolling the statute of limitations—which has not yet been alleged here—Block's negligence claims must clearly be dismissed as time-barred.

Notwithstanding the conclusions just stated, with respect to all of these counts Block will be granted leave to replead. *Cf. O'Brien v. Nat'l Property Analysts Partners*, 719 F.Supp. at 232 (allowing repleading to allege facts as to time of discovery of fraud and with respect to concealment of fraud). There is a suggestion that certain of Touche's misrepresentations as to the scope and performance of its work may not have not been known to Block in 1982, leaving open the possibility of concealment, and some ground for the tolling of the statute of limitations may be available other than the Revenue Agent's report.

*The Rule 9(b) Motion*

In view of the determination that the claims against Touche are time-barred, it not appropriate to determine the Rule 9(b) motion at this time. In the event that a second amended complaint is filed, the issues of scienter and the particularity of the fraud charge will be examined in the light of such a pleading, as will the accountant's liability issues pressed by Touche as independent grounds for dismissal.

*Conclusion*

For the reasons set forth above, the motion to dismiss the amended complaint against Touche is granted with leave to replead within twenty (20) days.

It is so ordered.

---

2. Were it otherwise, the notice to Block would have came from:
> [a] single IRS agent operating out of a single regional office regarding a single year of a single partner's return ... The partnership has taken the position that the agent's recommendation is erroneous and is appealing to the IRA Appeals Office.

*Block*, 691 F.Supp. at 694 (S.D.N.Y.1988). Thus, under the plaintiff's theory of no accrual until actual loss—not adhered to here—Block's claims against Touche are yet unripe.