**Stanley B. BLOCK, et al., Plaintiffs,**

v.

**FIRST BLOOD ASSOCIATES, et al., Defendants.**

**No. 86 Civ. 8811 (RWS).**

United States District Court,
S.D. New York.

April 30, 1991.

The Law Offices of I. Stephen Rabin, New York City (I. Stephen Rabin, Joseph P. Garland, of counsel), for plaintiffs.

Kaye, Scholer, Fierman, Hays & Handler, New York City (Jay G. Strum, John D. Chapman, of counsel), for defendants.

## OPINION

SWEET, District Judge.

Defendants First Blood Associates, A. Frederick Greenberg and Richard M. Greenberg (collectively, "First Blood") have moved for summary judgment dismissing the complaint of plaintiff Stanley

---

1. First Blood also sought dismissal of the fourth and fifth causes of action for failure to state a claim upon which relief could be granted. In

B. Block and others ("the Investors") on the grounds that their claims are barred by the statute of limitations. For the following reasons, the motion is granted.

*Prior Proceedings*

The parties, the underlying facts and the tortuous history of this dispute are described in detail in the prior opinions in this matter, familiarity with which is assumed. *Block v. First Blood Associates,* 663 F.Supp. 50 (S.D.N.Y.1987) (*"Block I"*); *Block v. First Blood Associates,* 691 F.Supp. 685 (S.D.N.Y.1988) (*"Block II"*); *Block v. First Blood Associates,* 125 F.R.D. 39 (S.D.N.Y.1989) (*"Block III"*); *Block v. First Blood Associates,* 743 F.Supp. 194 (S.D.N.Y.1990) (*"Block IV"*).

*The Present Motion*

Following the Second Circuit's decision in *Ceres Partners v. GEL Associates,* 918 F.2d 349 (2d Cir.1990) to adopt a uniform statute of limitations in securities actions brought under § 10(b) of the Securities Exchange Act of 1934, First Blood moved on November 19, 1990 for summary judgment, seeking to apply the new rule announced in *Ceres,* under which claims must be filed within "one year of their discovery, but in no event more than three years after their accrual." *Id.* at 351.

Once the *Ceres* issue had drawn First Blood's attention to the limitations question, it recognized that even under pre-*Ceres* law there was a question of the timeliness of the Investors' claims. First Blood's reply papers therefore broadened the argument to include this issue as well. Oral argument was heard on January 14, 1991, and following further submission by the parties, the matter was taken on submission on February 21, 1990.[1]

*Discussion*

1. The Investors Have Not Established Prejudice Which Would Warrant Denying Amendment of the Answer.

 Although First Blood has not in fact moved to amend its answer, its invocation

the course of briefing the motion, the Investors have agreed to withdraw these claims, and this aspect of the motion is therefore moot.

of the statute of limitations must be considered as a motion to amend under Fed.R. Civ.P. 15(a) to assert the statute as an affirmative defense. *See Williams v. Chase Manhattan Bank, N.A.*, 728 F.Supp. 1004, 1007 (S.D.N.Y.1990). Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." As the Second Circuit has often stated,

> Reasons for a proper denial of leave to amend include undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party. Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend.

*State Teachers Retirement Board v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)); *see also Richardson Greenshields Securities, Inc. v. Lau*, 825 F.2d 647, 653 n. 6 (2d Cir.1987); *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir.1973) (Lumbard, J.).

The Investors assert that permitting First Blood to assert the statute of limitations at this late date, nearly four years after its original answer, constitutes "undue delay" which should prevent First Blood from amending that answer. Therefore, they contend, under Fed.R.Civ.P. 8(c), First Block must be held to have waived the limitations defense, and its motion must be denied.

However, as *Fluor* indicates, a party opposing a proposed amendment on the basis of delay must also demonstrate either the amending party's bad faith or the undue prejudice which would result from the amendment. The Investors do not seriously contend that First Blood's failure to avail itself of the limitations argument prior to this time was the result of anything but inadvertence, nor has any evidence been adduced which would support a finding of bad faith.

The Investors do, however, assert that permitting the amendment at this late stage of the litigation would cause them substantial prejudice, primarily based on the extensive discovery and motion practice which have taken place and the substantial attorneys' fees and expenses which have accumulated over the course of the lawsuit. They also allege that First Blood's failure to raise the limitations issue earlier denied them the opportunity to file their claims in a jurisdiction in which they might not have been time-barred.

In order to resolve the issue, it is necessary to consider the nature of the *Fluor* requirement of "prejudice." It seems clear that a party opposing amendment cannot prove prejudice merely by the fact that the amendment may make it more difficult, or even impossible, for that party to prevail in the litigation. This conclusion applies no matter how heavily the party opposing amendment has invested in the litigation: a claim or defense which is not itself meritorious cannot be preserved simply by its proponent's expenditure of funds.

As the Investors correctly note, a plaintiff's assertion of a time-barred claim is valid so long as the defendant does not assert the defense. Nevertheless, a plaintiff may reasonably be charged with knowledge of the limitations period applicable to his complaint, and thus a plaintiff who incurs significant expenses in pressing an untimely claim cannot thereafter rely on those expenses to establish prejudice.

A review of the case law supports the conclusion that payment of past expenditures which would not otherwise have been incurred is not prejudice of the type required to prevent amendment. In a typical case, such prejudice may be established only where the proposed amendment would require the opponent to expend significant additional amounts in order to conduct discovery and prepare for trial, or where it would significantly delay the resolution of the dispute. For example, in *Fluor* the Second Circuit reversed the denial of leave to amend the complaint, stating that "[t]his is not a case where the amendment came on the eve of trial and would result in new problems of proof." 654 F.2d at 856. In *Calloway v. Marvel Entertainment Group*, 110 F.R.D. 45 (S.D.N.Y.1986), leave

to amend was granted, although on the eve of trial, "since there is no indication of undue delay, no need for additional discovery on these issues, nor any indication that such amendments would prejudice" the defendant. *Id.* at 48. In *United States v. Continental Illinois National Bank and Trust Co. of Chicago*, 889 F.2d 1248 (2d Cir.1989), the court permitted amendment, stating that "the adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." *Id.* at 1255 (citing *S.S. Silberblatt, Inc. v. East Harlem Pilot Block–Building 1 Housing Dev. Fund Co.*, 608 F.2d 28, 43 (2d Cir.1979)). In the present case, while First Blood's amendment may come shortly before trial, it will neither delay the resolution of the case nor require the Investors to prepare to address new issues at trial, but rather will obviate the need for a trial.

Another line of cases raising issues of timeliness in amending an answer are those cases dealing with the assertion of the affirmative defense of arbitration. Cases in which such amendments have been denied reflect the fact that this defense does not in any way resolve the dispute, but merely transfers it to a new non-judicial forum, in which the parties may be forced to repeat many of the steps which they have already completed in the litigation. *See, e.g., Demsey & Associates, Inc. v. S.S. Sea Star*, 461 F.2d 1009, 1018 (2d Cir.1972) (rejecting amendment attempted after trial on merits); *Bengiovi v. Prudential–Bache Secur., Inc.*, 1985 Fed.Sec.L.Rep. (CCH) ¶ 91,012, 1985 WL 2143 (D.D.C.1985) (rejecting attempted amendment four and a half weeks before trial). On the other hand, where the plaintiff would face additional expenses, courts are reluctant to find sufficient prejudice to deny the amendment. *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 890 (2d Cir.1985); *Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.*, 754 F.2d 457, 463 (2d Cir.) ("[plaintiff] is no worse off proceeding now to arbitration than had [defendant] moved for arbitration

immediately after being served with the amended complaint"), *cert. denied,* 474 U.S. 819, 106 S.Ct. 68, 88 L.Ed.2d 55 (1985).

Thus there is no authority which supports the Investors' contention that their disbursement of legal fees constitutes the type of prejudice necessary to prevent First Blood from asserting the statute of limitations.

As for the Investors' second argument that First Blood's delay has resulted in prejudice, it is true that a defendant will not be allowed to amend his answer to plead the statute of limitations if the delay in asserting the defense has prevented the plaintiff from bringing a timely action in another jurisdiction. *See, e.g., Strauss v. Douglas Aircraft Co.*, 404 F.2d 1152, 1157 (2d Cir.1968):

> [T]he prejudice to Strauss resulting from Douglas' silence [on the limitations issue] is easily understood. If Douglas had pleaded the California Statute of Limitations as a defense in May, 1962, Strauss would have had ample time to initiate his litigation in Florida, where the [statute of limitations] would not have run until May, 1963.

However, the parties here disagree whether, if First Blood had raised the statute of limitations issue in its original answer in January 1987, the Investors could in fact have refiled their action in another jurisdiction.[2] The Investors suggest that at least Iowa and Maine have limitations periods which would have allowed them to file timely claims in those states if the defendants had moved to amend earlier. First Block counters that, not only would neither of those states have had personal jurisdiction over the defendants, the statutes of limitations cited by the Investors are not the ones which those states apply to § 10(b) claims. Without delving too deeply into the limitations and choice of law policies of every state in the nation, it can be said that the Investors have not adduced evidence sufficient to prove that their claim could have been filed elsewhere

2. Clearly, the relevant date in this respect must be the date on which the answer was filed, rather than the date the action was commenced,

as First Blood would not have been obliged to notify the Investors of any limitations problem before that time.

and therefore have not established the prejudice necessary to prevent First Blood's amendment.

### 2. The Statute of Limitations Began to Run in 1982.

■ In *Block IV*, First Blood's accounting firm moved to dismiss the Investors' claims on statute of limitations grounds. After analyzing the Investors' claims and the type of harm which they alleged, it was held that the statute had begun to run in October 1982 when the last Investor purchased shares in the limited partnership in question. 743 F.Supp. at 197–200. While that decision by its terms dealt only with the Investors' claims against the accountants rather than First Blood, the reasoning applies equally well here.

The Investors insist that the statute should not have started to run until late 1984, when they first realized that they were not receiving the expected return on their investments. An analogous argument was explicitly rejected in *Block IV*:

> [I]t is not disputed here that whatever action [the accounting firm] took, whatever part it played in the entire scheme, took place at or before the issuance of the Memorandum containing the Report in 1982. The [IRS'] disallowance of the [tax] benefits in 1987 simply confirmed the effect noted in the allegations of the initial complaint and in no way affected or altered whatever it was that [the firm] had done. Confirmation is not synonymous with discovery.
>
> [A]ny alleged loss for a violation of § 10(b) that was allegedly caused by [the accountants] was caused in 1982 when [the firm] prepared its Report and when Block invested in purported reliance thereon. The statute of limitations began to run at that time, and the claim is time barred now.

743 F.Supp. at 200. Similarly here the Investors' claims against First Blood are all based on actions prior to the sale of shares in the limited partnership. The fact that the expected returns did not materialize in 1984 "in no way affected or altered whatever it was that [First Blood] had done." The Investors have not offered compelling reasons to reconsider this conclusion, therefore the statute of limitations must be held to have begun to run no later than October 1982. As the Investors' class action complaint[3] was not filed until December 1986, the relevant limitations period is a little over four years. Additionally, the Investors concede that they should have discovered the fraud in late 1984, and that the complaint was therefore filed between two and three years after discovery. *See* Plaintiff's January 10, 1991 Surreply Memorandum of Law in Opposition to Motion to Dismiss at 20.

### 3. Under New York's Borrowing Statute the Investors' Claims Were Time–Barred in December 1986.

As the Second Circuit explained the situation which existed before *Ceres:*

> [T]his Circuit, like most others, has consistently held that the statute of limitations [in securities cases] should be adopted by reference to the pertinent laws of the forum state....
>
> In order to determine what statute of limitations New York would apply, a district court sitting in New York must consider the borrowing rules found in N.Y. CPLR § 202. With respect to nonresidents of New York, § 202 provides, in pertinent part, that:
>
>> [a]n action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued....
>
> We have construed this provision as meaning that in a § 10(b) action, the cause of action accrues "where 'its eco-

---

3. The parties also disagree over the issue of whether the claims of the Investors' Amended Complaint properly "relate back" to the original class action complaint filed in December 1986. Because the class action complaint was filed more than four years after the statute of limita-

tions began to run, even assuming *arguendo* that the complaint does relate back to the class action complaint, under New York's borrowing statute none of the Investors' claims were timely in December 1986.

nomic impact is felt, normally the plaintiff's residence.'" Thus if a suit brought in the "place" of the plaintiff's residence would be time-barred, the suit in a New York federal court is time-barred.

*Ceres,* 918 F.2d at 352–53 (citations omitted, quoting *Sack v. Low,* 478 F.2d 360, 366 (2d Cir.1973)).

First Blood asserts, without contradiction, that all of the Investors are residents of the states of Alabama, California, Colorado, Connecticut, Florida, Illinois, Pennsylvania, South Carolina, Tennessee and Texas. It also cites authority establishing that under the statutes of limitations applied to § 10(b) actions in each of those jurisdictions the Investors' claims were untimely as of December 1986:

Alabama—2 years. *See White v. Sanders,* 650 F.2d 627, 629 (5th Cir.1981).

California—3 years. *See Davis v. Birr, Wilson & Co.,* 839 F.2d 1369, 1369–70 (9th Cir.1988).

Colorado—3 years. *See Aldrich v. McCulloch Properties, Inc.,* 627 F.2d 1036, 1041 (10th Cir.1980).

Connecticut—3 years at most. *See Klock v. Lehman Bros. Kuhn Loeb Inc.,* 584 F.Supp. 210, 216 (S.D.N.Y. 1984); *see also Welch v. Cadre Capital,* 923 F.2d 989, 993 (2d Cir.1991) (two years from date of discovery).

Florida—5 years from loss/2 years from discovery. *See Byrne v. Gulfstream First Bank & Trust Co. of Boca Raton,* 528 F.Supp. 692, 693–94 (S.D.Fla. 1981), *aff'd,* 720 F.2d 686 (11th Cir. 1983).

Illinois—3 years. *See Teamsters Local 282 Pension Trust Fund v. Angelos,* 815 F.2d 452, 455–56 (7th Cir.1987).

Pennsylvania—3 years at most. *See Alfaro v. E.F. Hutton & Co.,* 606 F.Supp. 1100, 1105–06 (E.D.Pa.1985).

South Carolina—3 years. *See Mid–Carolina Oil, Inc. v. Klippel,* 526 F.Supp. 694, 695–97 (D.S.C.1981), *aff'd mem.,* 673 F.2d 1313 (4th Cir.), *cert. denied,* 457 U.S. 1107, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982).

Tennessee—3 years at most. *See Nichols v. Merrill Lynch, Pierce, Fenner & Smith,* 706 F.Supp. 1309, 1320–21 (M.D.Tenn.1989).

Texas—4 years at most. *See Longden v. Sunderman,* 737 F.Supp. 968, 971 (N.D.Tex.1990).

Thus under the New York borrowing statute applied in securities cases prior to *Ceres,* all of the Investors' claims were time-barred at the time the original class action complaint was filed in December 1986.

4. Because the Investors Did Not Rely on Pre–Ceres Law, Ceres Can Be Applied Retroactively.

■ Alternatively, even if First Blood's motion to amend its answer were to be held untimely with respect to the pre-*Ceres* statute of limitations, it could not be considered untimely insofar as it seeks to apply the *Ceres* rule, as the motion was filed only eleven days after *Ceres* was handed down. Therefore, it is appropriate to consider whether *Ceres* should be applied retroactively to the Investors' claims.

The major question left unresolved by *Ceres* was whether the new limitations rule announced there would be applied to cases which had been filed before that decision was handed down. *See Ceres,* 918 F.2d at 364. The Second Circuit has since refused to apply *Ceres* retroactively on two different occasions. *Levine v. NL Indus., Inc.,* 926 F.2d 199 (2d Cir.1991); *Welch v. Cadre Capital, supra,* 923 F.2d 989; *see also Finkel v. Stratton Corp.,* 754 F.Supp. 318, 331–32 (S.D.N.Y.1990). However, these cases make clear that the question of whether to apply the rule retroactively is one which must be decided on a case by case basis. The standard to be used in making this determination was set forth in *Welch:*

We look to the three-part test set forth in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349 [30 L.Ed.2d 296] (1971), to determine whether this rule should be applied retroactively to bar the plaintiffs' '34 Act claims.... To qualify for purely prospective application, a decision "must establish a new principle of law, either by overruling clear past precedent

on which litigants may have relied, ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed." A court should then "weigh" in each case whether retroactive application would conflict with the purposes of the rule and whether it would produce inequitable results.

923 F.2d at 993 (quoting *Chevron,* 404 U.S. at 106, 92 S.Ct. at 355, footnotes omitted). The court emphasized that "the first prong of the *Chevron* test requires only a prior rule on which plaintiffs 'may' have relied, and does not create a test of actual reliance." 923 F.2d at 993 n. 5. *See also Levine,* 926 F.2d at 201–02; *Finkel,* 754 F.Supp. at 331–32.

The rationale for denying retroactive application of *Ceres* in *Welch, Levine* and *Finkel* was that prior to *Ceres* it was well-settled in this Circuit that the statute of limitations applied in securities actions was the most nearly analogous state statute. *See Welch,* 923 F.2d at 994 ("the impending revision of a limitations period for 10b–5 claims was not so clearly foreshadowed that plaintiffs were chargeable with its prediction"); *Levine,* 926 F.2d at 202; *Finkel,* 754 F.Supp. at 332 ("Under the New York statute and the Second Circuit rule in existence at the time of filing, [plaintiffs'] § 10(b) claim was timely").

In the present case, however, as the preceding discussion makes clear, the Investors' claims were in fact untimely even under the pre-*Ceres* rule. Bearing in mind the *Welch* comment that the *Chevron* test requires a rule on which the plaintiff "may" have relied, the Investors cannot satisfy the first *Chevron* prong, as at most they could have relied on First Blood's failure to notice the limitations problem, and that therefore the federal limitations period announced in *Ceres* ought to apply to their claims. *See United States v. Johnson,* 457 U.S. 537, 550 n. 12, 102 S.Ct. 2579, 2587 n. 12, 73 L.Ed.2d 202 (1982) (describing the first *Chevron* prong as "the threshold test

for determining whether or not a decision should be applied nonretroactively").[4]

The limitations period adopted in *Ceres* is the "one year/three year" rule, *i.e.,* one year from the plaintiff's discovery of the claim, but in no event more than three years from the date of accrual of the claim. Under this rule, the Investors' claims would have been time-barred as of October, 1985, more than one year prior to the filing of the class action complaint.

*Conclusion*

Under the limitations rule in effect prior to the Second Circuit's decision in *Ceres* the Investors' claims were untimely at the time the original class action complaint was filed. Therefore, First Blood's motion for summary judgment based on the pre-*Ceres* statute of limitations is granted. Alternatively, as the Investors could not have relied on the pre-*Ceres* state of the law, *Ceres* applies retroactively to bar their claims.

It is so ordered.

---

**4.** Moreover, in opposing First Blood's motion, the Investors have at least tacitly admitted that they relied on a mistaken belief that New York's

six year limitations period applied to their claims.